# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| RICHARD B. CORTEZ,<br><br>              Plaintiff,<br><br>    v.<br><br>UNITED NATURAL FOODS, INC., et al.,<br><br>              Defendants. | Case No.  18-cv-04603-BLF<br><br>**ORDER DENYING MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR STRIKE**<br><br>[Re: ECF 11, 15] |

Plaintiff Richard Cortez brings this putative class action against his employers Defendants United Natural Foods, Inc. and United Natural Foods West, Inc. for various California state law wage and hour violations.  Defendants removed the action to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  Before the Court is Plaintiff's motion to remand (Remand Mot., ECF 15) and Defendants' motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and/or to strike under Rule 12(f) (MTD, ECF 11).  The Court held a hearing on the motions on December 20, 2018.  Defendants submitted evidence in support of their argument that the amount in controversy in the case exceeds $5,000,000, as required by CAFA.  At the hearing on the motion, the Court ordered Defendants to submit new calculations based on the same underlying evidence Defendants had previously submitted.  Defendants submitted new calculations and supplemental briefing, which Plaintiff opposed.

For the reasons that follow, the Court DENIES Plaintiff's motion to remand and GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss or strike.

///

## I.   BACKGROUND[1]

Plaintiff Richard Cortez worked as a delivery driver for Defendants United Natural Foods, Inc. and United Natural Foods West, Inc. from June 2016 to August 2017.  Compl. ¶ 5, ECF 1-1.  Plaintiff brings this action on behalf of two subclasses of individuals employed by Defendants in California within the four year period preceding the filing of this action: (1) "[t]hose persons employed by Defendants as delivery drivers"; and (2) "persons employed by Defendants to whom Defendants issued wage statements." *Id.*  Plaintiff alleges that similarly situated drivers experienced each of the problems discussed below.

Plaintiff alleges that he was required to use personal cell phones for work, but that Defendants did not begin reimbursing him until July 2017, when Defendants began providing $20/month, though that amount did not sufficiently reimburse Plaintiff. *Id.* ¶ 7.  Defendants also routinely required Plaintiff to work longer than 5 hours without rest or meal breaks, stating "there was no time for such break." *Id.* ¶ 8.  Plaintiff alleges Defendants should have known about this failure to provide breaks because they were aware of the drivers' delivery locations and schedules. *Id.*  Plaintiff never signed a meal period waiver.  *Id.*  Defendants did not pay Plaintiff an additional hour of compensation for these missed breaks.  *Id.* ¶ 9.  Because they did not pay Plaintiff for these missed breaks, Defendants failed to include any meal and rest break compensation on Defendants' wage statements.  *Id.*

For a portion of Plaintiff's employment UNFI did not pay Plaintiff for all of his hours worked or all of his overtime, though he routinely worked more than 8 hours a day and 40 hours a week without additional compensation. *Id.* ¶ 10.  Plaintiff also routinely received driver bonuses, but this amount was not included in Plaintiff's regular rate of pay, thus resulting in inaccurate overtime rates.  *Id.*  Because of these failures, Defendants failed to provide accurate wage statements to Plaintiff.  Also, for all employees (not just delivery drivers), Defendants failed to provide on the wage statements either the last four digits of the employees' social security numbers or their employee identification numbers.  *Id.*

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss.  *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

Based on these allegedly unlawful acts by Defendants, Plaintiff filed the instant Complaint in Santa Clara County Superior Court on June 18, 2018, bringing the following seven causes of action: (1) failure to indemnify employees for necessary expenses under Cal. Lab. Code § 2802; (2) failure to provide rest and meal breaks in violation of Cal. Lab. Code §§ 226.7 and 512; (3) failure to provide accurate, itemized wage statements in violation of Cal. Lab. Code § 226(a); (4) failure to pay regular and overtime wages in violation of Cal. Lab. Code §§ 510, 558, 1194; (5) failure to pay wages when due in violation of Cal. Lab. Code §§ 201, 202, 203, 204, 204b; (6) unfair business practices under Cal. Bus. & Prof. Code § 17200, *et seq.*, for these labor code violations; and (7) a claim under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.* Plaintiff seeks various relief, including damages of $4,999,999.99, *id.* ¶ 11, and reasonable attorneys' fees, *id.* at 13. Defendants were served on June 28, 2018. Not. of Removal ("Not.") ¶ 5, ECF 1.

On July 30, 2018, Defendants removed the action to this Court, asserting that this Court has diversity jurisdiction under the Class Action Fairness Act ("CAFA") because "(i) diversity of citizenship exists between at least one putative class member and one Defendant; (ii) the aggregate number of putative class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453." *Id.* ¶ 6. As to these requirements, Defendants first alleged that United Natural Foods, Inc. ("UNFI") is incorporated in Delaware with a principal place of business in Rhode Island, while Plaintiff is a citizen of California, thus satisfying the diversity of citizenship. *Id.* ¶¶ 8–10. Second, Defendants submitted a declaration by Anne Mosher, National Payroll Services Manager of UNFI and its subsidiaries, averring that Defendants employed approximately 653 delivery drivers in California during the relevant period and at least 3,723 employees received wage statements during that period. *Id.* ¶¶ 12, 13; Mosher Decl. ISO Not. ¶¶ 4, 6, ECF 2. Third, Defendants calculated that the amount in controversy is ostensibly $5,000,000. Specifically, Defendants used the numbers provided by Ms. Mosher to show that the amount in controversy for the wage statement and waiting time claims, as well as the attorneys' fees request, put more than $5,000,000 in controversy. *See* Not. ¶¶ 22–31.

## II.   MOTION TO REMAND

### A.   Legal Standard

Removal is proper where the federal courts have original jurisdiction over an action brought in state court.  28 U.S.C. § 1441(a).  Pursuant to CAFA, federal courts have original jurisdiction over state law actions where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, the number of members of all proposed plaintiff classes in the aggregate is more than 100, and in this case, where any member of a class of plaintiffs is a citizen of a State different from any defendant.  28 U.S.C. § 1332(d).  Typically, courts strictly construe the removal statute against removal jurisdiction.  *E.g.*, *Provicial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).  However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015).

In seeking removal under CAFA, the defendant bears the burden of establishing federal jurisdiction.  *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  The defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.  *See Dart Cherokee*, 135 S. Ct. at 553–54 (citing 28 U.S.C. § 1446(c)(2)(B)).  A defendant can meet this burden in its notice of removal by including "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Id.* at 554.  But "when the plaintiff contests, or the court questions, the defendant's allegation," the defendant must submit evidence to establish the amount in controversy by a preponderance of the evidence.  *Id.* at 554 (citing 28 U.S.C. § 1446(c)(2)(B)); *see Ibarra*, 775 F.3d at 1195.  The plaintiff may submit evidence to the contrary.  *Ibarra*, 775 F.3d at 1195 (citing *Dart Cherokee*, 135 S. Ct. at 554).  "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d

373, 377 (9th Cir. 1997)).  "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Id.*

### B.  Discussion

Defendants submitted their notice of removal with a supporting declaration and submitted a supplemental declaration in support of their Opposition to Plaintiff's remand motion.  Plaintiff objected to this evidence on myriad grounds.  Plaintiff also argues that Defendants have not established by a preponderance of the evidence that the case meets each of CAFA's criterion.  The Court discusses each of these issues in turn.

#### 1.  Evidentiary Objections

In his motion, Plaintiff objects to the evidence presented by Ms. Mosher in her declaration in support of Defendants' notice of removal ("Mosher removal declaration") on several bases, including "hearsay, lack of foundation and personal knowledge, speculation, and failure to authenticate."  Remand Mot. at 29–30.  He argues that Ms. Mosher failed to describe or attach the payroll data on which she bases her conclusions, failed to establish that she has personal knowledge of the information to which she attests, and did not explain how any such records might satisfy the business-records hearsay objection.  *See id.* at 10, 15, 19–22.  He also argues that Ms. Mosher's declaration contains only generalizations and approximations, which are insufficient to establish the amount in controversy.  *See id.* at 10–11, 17–19.

Though Defendants oppose Plaintiff's objections to the Mosher removal declaration, *see* Remand Opp. at 8–9, ECF 23, they also submitted another declaration from Ms. Mosher in support of their opposition with additional information and more precise data ("Mosher opposition declaration").  *See* Mosher Decl. ISO Opp., ECF 24.  In this declaration, Ms. Mosher attests that she has been the National Payroll Services Manager for eight years and in that role is responsible for managing and implementing payroll issues and changes, including managing the electronic databases of Defendants' payroll data.  *Id.* ¶ 2.  Using this payroll data, she "compiled and reviewed summary reports of Defendants' payroll data for all employees who worked in California" for the relevant dates.  *Id.* ¶ 3.  She also describes in more detail than her removal

declaration the number of exempt and non-exempt employees who received wage statements. *See id.* ¶¶ 3–7.

In reply, Plaintiff contends that the Mosher opposition declaration still does not present competent evidence in support of Defendants' contentions, arguing that Defendants still have a hearsay issue and that Ms. Mosher's evidence still relies on inappropriate generalizations and approximations. Remand Reply at 11, ECF 27.

The Court is satisfied that the Mosher opposition declaration presents admissible evidence that the Court may consider in determining whether Defendants have sufficiently established the amount in controversy. As Defendants' National Payroll Services Manager for the past eight years, Ms. Mosher has personal knowledge of how Defendants manage their payroll systems, and she personally compiled and analyzed that data to create the summary reports submitted here. Mosher Decl. ISO Opp. ¶¶ 1–2. Her description of the information presents a proper foundation for the evidence and is not merely speculative. The Court is also satisfied that this information is not inadmissible hearsay. Courts in this circuit routinely rely on this type of evidence in ruling on motions to remand. *See Lucas v. Michael Kors (USA), Inc.*, No. 18-CV-1608-MWF, 2018 WL 2146403, at *3 (C.D. Cal. May 9, 2018); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 947–49 (C.D. Cal. 2014); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010). Finally, Ms. Mosher's opposition declaration includes more specific, less generalized information than her removal declaration. For example, she gives the precise number of non-exempt employees to whom Defendants issued wage statements, and she gives the total number of wage statements Defendants issued to exempt employees. *See* Mosher Decl. ISO Opp. ¶¶ 4–7. These numbers are not mere generalizations or speculation that would prohibit the Court from making a reasonable determination as to the amount in controversy. And to the extent these numbers are objectionable as being mere generalizations, the Court finds that Ms. Mosher cures these deficiencies in her third and final declaration ("Mosher supplemental declaration"), as discussed below.

### 2. CAFA Jurisdictional Requirements

To meet their burden of demonstrating that the Court has jurisdiction under CAFA,

Defendants must prove the following criteria by a preponderance of the evidence: (1) neither defendant is a government entity; (2) the putative class contains at least 100 members; (3) at least one plaintiff is diverse in citizenship from any defendant (*i.e.*, minimal diversity); and (4) the aggregate amount in controversy is greater than $5,000,000.  *See Ibarra*, 775 F.3d at 1195 (citing 28 U.S.C. § 1332(d)).  Plaintiff primarily disputes Defendants' evidence and calculations concerning the amount in controversy; however, Plaintiff also challenges Defendants' proof on all of the other elements, except minimal diversity, Mot. at 14, n.10.[2]

In his motion, Plaintiff states that Defendants fail to prove they are not governmental entities.  *See* Remand Mot. at 15.  However, Defendants submitted evidence in support of their Opposition demonstrating that they are not governmental entities.  *See* Mosher Decl. ISO Opp. ¶ 2.

Likewise, Plaintiff claims that Defendants fail to prove that the putative class contains more than 100 members because Ms. Mosher's removal declaration does not contain admissible evidence.  *See* Remand Mot. at 28–29.  The Court has held that Ms. Mosher submits competent evidence in her opposition declaration.  Ms. Mosher attests that Defendants employed 3,723 non-exempt employees in California during the relevant time period.  *See* Mosher Decl. ISO Opp. ¶ 4.  Thus, Defendants have provided sufficient proof that the putative class size is greater than 100 employees.

As to the amount in controversy, Defendants submit evidence relating to Plaintiff's wage statement and waiting time claims, as well as to reasonable attorneys' fees.  Because the Court holds that Defendants' evidence demonstrates that the amount in controversy is greater than $5,000,000 for the wage statement claim and attorneys' fees, combined, the Court does not address the waiting time claim.

### a.  Wage Statement Claim

In their Notice of Removal, Defendants alleged that the wage statement claim alone (claim

---

[2] Plaintiff is a California citizen, Compl. ¶ 2, and United Natural Foods, Inc. is incorporated in Delaware and maintains its principal place of business in Rhode Island, Kassab Decl. ISO Not. of Removal ¶¶ 3–4, ECF 3.

3) puts $5,004,000 in controversy. Not. ¶ 24. Defendants note that Labor Code § 226(e) would allow each injured employee to recover "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." *Id.* ¶ 23 (citing Cal. Labor Code § 226(e)). Plaintiff alleges that all of Defendants' employees in California received inaccurate wage statements without the correct identifying information. Compl. ¶¶ 1, 10. According to Ms. Mosher, "approximately 1,251 non-exempt employees worked during each pay period" and were "generally . . . paid on a weekly basis." Mosher Decl. ISO Not. ¶ 5. As such, Defendants calculate that there were 52 pay periods in the one-year limitations period for each of these 1,251 employees. Defendants then multiplied 52 weeks times $100, to determine that each employee would reach the $4,000 penalty cap. Finally, they multiplied $4,000 by 1,251 employees to achieve a $5,004,000 amount in controversy. Not. ¶ 24.

Plaintiff objected to these calculations based on evidentiary objections, as discussed above, and because Defendants "base[d] their calculations on incorrect penalty amounts." Mot. at 22. Specifically, Defendants (1) assumed a 100% violation rate (*i.e.*, that every wage statement failed to include the identity information) and (2) used a $100 penalty rate (to achieve the $4,000 maximum) though courts have held that the $50 rate must be used for all pay periods before the defendant has notice of the violation, after which the $100 rate can be used. Mot. at 23–24 (citing *Amaral v. Cintas Corp.*, 163 Cal. App. 4th 1157, 1207–09 (2008), *Vasserman*, 65 F. Supp. 3d 932, and other cases). As to the $100 penalty rate, because Defendants did not allege that they were on notice of the violations, Plaintiff argues the $50 rate is appropriate, which would put only $3,252,600 in controversy for the 1,251 employees. *See* Mot. at 24. In fact, Plaintiff says, Defendants did not aver that any single employee received more than one faulty statement, such that Defendants can prove only that $50 is appropriate for each of the 1,251 employees, totaling a mere $62,550.

In response, Defendants contend their use of a 100% violation rate stems from Plaintiff's allegation that every wage statement was deficient. Opp. at 10 (citing Not. ¶ 24, Compl. ¶ 29). And they cite case law supporting the argument that the $100 violation rate applies in every period

8

after the first violation, regardless whether the defendant is on notice of the violation.  Opp. at 11 (citing *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1335–36 (E.D. Cal. 2015); *Lucas*, 2018 WL 2146403, at *8).  Also in support of their Opposition, Defendants submit Ms. Mosher's opposition declaration.  In this declaration, Ms. Mosher avers that Defendants issued wage statements to 2,490 non-exempt California employees.  Mosher Decl. ISO Opp. ¶ 6.  Of these employees, 1,386 received 41 or more wage statements in the relevant period, which means they would reach the $4,000 cap using a $100 penalty fee, resulting in a total of $5,544,000.  Opp. at 12.  Ms. Mosher also compiles a list of employees who received fewer than 41 wage statements during this time, listing how many wage statements each received and calculating that, using the $100-per-violation rate, these employees would be entitled to $1,534,700 total.  Mosher. Decl. ISO Opp., Ex. A, ECF 24-1.  These two numbers total an amount in controversy of $7,078,700.  Moreover, Ms. Mosher avers that Defendants issued 10,994 wage statements to *exempt* employees during this time period, paid on a bi-weekly basis to an average of 407 employees each period, resulting in total penalties of $1,037,850.  Opp. at 13.

At the hearing on the motion, the Court indicated it was inclined to agree with Plaintiff that the appropriate rate of penalties is $50 for all violations before the defendant is on notice of its violations and $100 after the defendant is put on notice.  As such, the Court instructed Defendants to submit revised calculations for the wage statement claims using the appropriate penalty rate of $50 per violation, because Defendant had not alleged that it was on notice of these violations.

Defendants submitted a third declaration from Ms. Mosher, in which she averred that Defendants had issued 90,414 wage statements to both non-exempt and exempt employees in the one-year period before removal.[3]  Mosher Suppl. Decl. ¶ 3 & Ex. A, ECF 36 (including table setting forth number of wage statements issued per pay period).  Using the $50 penalty rate, Defendants calculated a $4,520,700 amount in controversy for the wage statement claim ($50 x

---

[3] Defendants also included additional calculations related to the waiting time claim, despite this Court's explicit instruction that it would not consider additional evidence or calculations on that claim.  *See* Mot. Hearing Tr. at 42–44, ECF 38.  The Court need not and does not address the waiting time claim or this new evidence.

90,414 wage statements[4]).[5]  Def. Suppl. Br. at 2, ECF 35.

Plaintiff objects to this supplemental declaration, and the evidence submitted in support thereof, arguing that Defendant has submitted new evidence, as opposed to new calculations.  *See* Pl. Suppl. Br. at 1–3, ECF 40.  Plaintiff argues that Defendant's evidence now relates to the total number of wage statements, instead of being employee specific, in an attempt to circumvent the $4,000 week cap.  *Id.*  In her opposition declaration, Ms. Mosher had organized the evidence with respect to individual employees, showing the number of pay periods each employee had worked (equating the number of pay periods with the number of wage statements).  In that declaration, the total number of pay periods (and in turn wage statements) was 15,899.  By contrast, in her supplemental declaration, she simply calculated the total number of wage statements, which was 90,414.

The Court finds that Defendants have proven by a preponderance of the evidence that the amount in controversy for this claim is at least $4,520,700.

Plaintiff has alleged that all wage statements issued by Defendants during this time period failed to include the identifying information.  *See* Compl. ¶¶ 1, 10 ("[F]or all its employees, UNFI does not list either the last four digits of the social security number or an employee identification number on Plaintiff's and other employees' wage statements . . . ."); Compl. ¶ 29 ("UNFI was also aware that the employees' last four digits of their social security numbers, or employee identification numbers, do not appear on wage statements."); Compl. ¶¶ 6, 26 –31 (bringing wage statement claim on behalf of subclass B, which is defined as "[t]hose persons employed by Defendants to whom Defendants issued wage statements").  "[R]emoving parties have been permitted to base their calculations on a 100% violation rate when such assumptions are 'supported directly by, or reasonably inferred from, the allegations in the complaint.'"  *Ford v. CEC Entm't, Inc.*, No. 14-cv-01420-RS, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014)

---

[4] Using the $50 penalty rate, none of the employees would reach the $4,000 maximum penalty. ($50 x 52 weeks = $2,600).

[5] Defendants also argue, based on Plaintiff's cited authority, that the penalty rate should increase to $100 for the pay periods after Defendants received a Private Attorneys General Act Notice from Plaintiff.  *See* Def. Suppl. Br. at 3.  Because the Court finds the amount in controversy is met without requiring these increased calculations, it does not consider this argument.

1  (quoting *Altamirano v. Shaw Industries, Inc.*, 13-cv-0939-EMC, 2013 WL 2950600, at *5–7 (N.D.

2  Cal. June 14, 2013)); *cf. Ibarra*, 775 F.3d at 1199 (holding 100% violation rate was not

3  appropriate where plaintiff did not allege "that [the defendant] universally, on each and every

4  shift, violates labor laws by not giving rest and meal breaks"). The allegations here directly

5  support Defendants' use of a 100% violation rate, given that Plaintiff alleges that all employees

6  received defective statements. Defendants submit evidence showing that they issued 90,414 wage

7  statements to California employees during the relevant time. Assuming a $50 penalty for each

8  wage statement, the amount in controversy for this claim is at least $4,520,700.[6]

9      The Court is satisfied that Defendants submitted only new calculations, not new evidence,

10  in response to the Court's request for supplemental briefing. In the Mosher opposition

11  declaration, Ms. Mosher did not include 52 pay periods for every employee because employees

12  with 41 or more wage statements (*i.e.*, pay periods) hit the $4,000 statutory limit. So Ms. Mosher

13  pooled those employees and assigned them all $4,000 penalties. By contrast, Defendants did not

14  need to concern themselves with the $4,000 cap in their new calculations because a $50 penalty

15  rate applied weekly for the whole one-year period (*i.e.*, 52 pay periods) does not reach the $4,000

16  limit (52 periods x $50 = $2,600). As such, Ms. Mosher's supplemental declaration necessarily

17  included additional pay periods for those employees whose penalties had previously been cut off

18  at 41 weeks. Thus, the discrepancy between the number of pay periods in the opposition

19  declaration and the supplemental declaration is fully consistent with the Court's request that

20  Defendants recalculate the penalties using the lower rates.

21      In sum, Defendants submit evidence that they issued 90,414 wage statements during the

22  statutory one-year limitations period, which, using a $50 penalty rate, totals an amount in

23  controversy of $4,520,700. Plaintiff did not submit any evidence to rebut Defendants' evidence.

24  *Cf. Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1120 (C.D. Cal. 2016) ("A plaintiff is

25

---

26  [6] While the Court indicated at the hearing on the motion that it was inclined to agree with Plaintiff
that a defendant must be on notice of the violations in order for the $100 penalty to apply, the

27  Court need not firmly decide the issue at this stage, because Defendants meet the amount in
controversy requirement even assuming the lower penalty. The Court notes that this issue is

28  disputed within the circuit. *Compare, e.g.*, *Garnett*, 74 F. Supp. 3d at 1335–36 *with Perez v. Winn
Companies, Inc.*, 2014 U.S. Dist. LEXIS 158748, *17–*18 (E.D. Cal. Nov. 10, 2014).

required to come forward with contrary evidence only when the removing defendant has first come forward with sufficient evidence to meet its initial burden." (citation omitted)).

### b. Attorneys' Fees

Defendants argued in their notice of removal, based on their original calculations, that Plaintiff's claim for reasonable attorneys' fees added $1,500,408 to the amount in controversy. Not. at 9–10. Defendants calculated this amount using the 25% Ninth Circuit benchmark rate for attorney's fees

Plaintiff opposed Defendants' inclusion of this amount because it calculated the fees based on *projected* fees for the case, as opposed to limiting the fee calculation to fees incurred *prior to* removal. *See* Remand Mot. at 26–27. Moreover, Plaintiff argues that Defendants did not make a showing beyond mere speculation as to what fees Plaintiff will incur. *See id.* at 27–28. And finally, Plaintiff argued that, in any event, the total attorneys' fees should be *deducted* from the total amount in controversy, not added to it, because this is a common fund case in which any fee award will be taken from the fund should the case settle. *See id.* at 28.

In their Opposition, Defendants point out that the Ninth Circuit has definitively held that future estimated attorneys' fees are properly included in determining the amount in controversy under CAFA. *See Fritsch v. Swift Transportation Co. of Ariz.*, LLC, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."). Defendants argue that the 25% Ninth Circuit benchmark is appropriate here for determining fees, and that the Court can rely on its knowledge of customary rates and proper fees to calculate the fees here. *See id.* Moreover, Defendants request the Court take judicial notice of previous awards Plaintiff's counsel have received in a similar wage and hour class action, which totaled $1,386,000. *See* Remand Opp. at 16; Def. Req for Judicial Not. ("RJN"), Ex. 1, ECF 25.

Plaintiff does not refute that *Fritsch* held that a court can consider future attorneys' fees in its calculations, but he argues that Defendants have not submitted summary-judgment type evidence to support their use of the 25% benchmark, and also that Defendants' request for judicial notice is inappropriate because the Court cannot take judicial notice of the facts contained in a

court order.  *See* Remand Reply at 19.

In their supplemental briefing, Defendants use the penalties calculated in Ms. Mosher's supplemental declaration to find that a 25% attorneys' fee rate would result in fees of $1,130,175, thus resulting in a total amount in controversy of $5,650,875.  *See* Def. Suppl. Br. at 3.  Indeed, Defendants demonstrate that even an 11% rate for fees would put the total over $5,000,000.  *Id.* at 3 ($4,520,700 (wage statement penalties) x 0.11 = $497,277 (fees) + $4,520,700 = $5,017,977 (amount in controversy)).

The Ninth Circuit in *Fritsch* provided guidance to district courts to determine future reasonable attorneys' fees.  The Ninth Circuit recognized that "district courts have developed expertise in determining 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' when awarding attorneys' fees under a statute or contract authorizing recovery of 'reasonable attorneys' fees' at the close of litigation."  *Fritsch*, 899 F.3d at 795 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  In estimating future attorneys' fees, the court can rely on its "own knowledge of customary rates and [its] experience concerning reasonable and proper fees."  *Id.* (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).  Moreover, while the Ninth Circuit refused to hold that a court must always use the 25% rate of the final award to determine future attorneys' fees, the Court did "not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy."  *Id.* at 796 & n.6.

The Court finds that the Defendants have sufficiently demonstrated that the amount in controversy for future attorneys' fees puts the total amount in controversy over $5,000,000.  While the Court acknowledges the 25% benchmark does not automatically apply in all cases, the benchmark need only be adjusted "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Plaintiff does not raise any factors counseling against the application of the 25% benchmark, nor does the record before the Court reflect that a departure from this benchmark is warranted.  In the Court's experience, this appears to be a typical wage and hour class action to

which courts in this Circuit would likely apply the 25% benchmark rate. *See Ramirez v. Benihana Nat'l Corp.*, No. 18-CV-05575-MMC, 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019); *Hughes v. Fosdick*, 106 F. Supp. 3d 1078, 1083 (N.D. Cal. 2015); *Ramos v. Schenker, Inc.*, No. 5:18-CV-01551-JLS, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("'[W]hen including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate," especially in wage and hour class actions like this one where fee awards at settlement typically require court approval.'" (quoting *Garcia v. Lifetime Brands, Inc.*, 2016 WL 81473, at *4 (C.D. Cal. Jan. 7, 2016)). Even were the 25% fee not reasonable, the Court can certainly say that an 11% fee (all that is required for the amount in controversy to reach $5,000,000) is an eminently reasonable projection of the potential fees, given the rate's marked downward departure from the 25% benchmark.

A 25% fee here results in an award $1,130,175. The reasonableness of this award is confirmed by the award of $1,386,000 Plaintiff's counsel received in a separate wage and hour action. *See* RJN, Ex. 1 ("Order granting Plaintiff's motion for final approval of class," *Alcantar v. Hobart Service*, 11-cv-1600-PSG, Dkt. 317 (C.D. Cal. Aug. 13, 2018)).[7] Moreover, though this would be a common fund case should the case settle, the Court declines to hold it appropriate to *reduce* the fees from the amount in controversy, as Plaintiff requests. The Ninth Circuit in *Fritsch* made no distinction between common fund cases and non-common fund cases. Moreover, this case ultimately might not settle, making a common fund settlement merely speculative.

The Court holds, then, that Defendants have sufficiently proven that Plaintiff's request for reasonable attorneys' fees puts an additional $1,130,175 in controversy ($4,520,700 x 0.25 = $1,130,175). When this amount is added to the amount in controversy created by the wage statement claim ($4,520,700), the total amount in controversy in this action totals $5,650,875, and

---

[7] The Court takes judicial notice of this document because it is a matter of public record in which the facts are not subject to reasonable dispute. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012); *cf. Ramirez, Alvarez v. Interstate Hotels, LLC*, No. 2:18-cv-07684-SJO, 2019 WL 77133, at *3 (C.D. Cal. Jan. 2, 2019) (considering plaintiff's counsel's past fees' request in determining reasonable fees for amount in controversy); *Rhinehart v. Genworth Life & Annuity Ins. Co.*, No. 1:18-cv-01391-LJO, 2019 WL 295770, at *7 (E.D. Cal. Jan. 23, 2019) (considering fees awarded in similar case in determining reasonable fees for amount in controversy).

thus satisfies the final CAFA requirement.

For these reasons, Plaintiff's motion to remand is DENIED.

## III.     MOTION TO DISMISS OR STRIKE

### A.     Legal Standards

#### 1.  Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009).  A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment.  *Eminence*

United States District Court
Northern District of California

*Capital*, 316 F.3d at 1052.  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."  *Id.*  However a strong showing with respect to one of the other factors may warrant denial of leave to amend.  *Id.*

### 2.  Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted).  "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits."  *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

The decision to strike a portion of a party's pleading is within the sound discretion of the court.  *See Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).  If a claim or defense is stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party.  *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (per curiam).

### B.  Discussion

Defendants argue that all of the claims in Plaintiff's Complaint are fatally deficient under *Twombly* and *Iqbal*.  MTD at 1.  They also argue that the Court should strike certain portions of the Complaint because the relief sought is not available under California law.  *Id.*  As discussed in detail below, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss or, in the alternative, to strike.

### 1.  Motion to Dismiss

#### a.  Failure to Indemnify (Claim 1)

In his first cause of action, Plaintiff alleges that Defendants failed to indemnify him and

other drivers for their use of their personal cell phones to make and receive work related calls. Compl. ¶¶ 17–21. That provision of the Labor Code provides, in relevant part, that "[a]n employer shall indemnify his or her employee[s] for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). "Section 2802 claims are sufficiently pled where the complaint identifies the particular expenses that were not reimbursed and affirmatively alleges that the expenses were part of the plaintiff's job duties." *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016).

Defendants argue that the Complaint fails to state a claim because Plaintiff does not adequately allege either that Defendants had a policy requiring that drivers use their personal cell phones or that the drivers were not sufficiently reimbursed for use of their personal phones. *See* MTD at 6–7.

The Court holds that Plaintiff has sufficiently alleged a claim for failure to indemnify. Specifically, the Complaint alleges that "[a]s a driver for UNFI, Plaintiff and other similarly situated delivery drivers, were required to use their personal cell phones to make and receive work-related calls both from other UNFI employees and from customers of UNFI." Compl. ¶ 7. This allegation is plausible, given that Plaintiff and members of the relevant class were delivery drivers who might need to interact with customers to plan and complete their deliveries. Moreover, the Complaint alleges that Defendants began reimbursing the drivers in July 2017 in a monthly lump sum, suggesting that Defendants knew of and required the drivers to use their personal phones.[8] *Id.* Finally, the Complaint alleges that this amount "was not sufficient to reimburse" the drivers "for the costs incurred to use their personal cell phones at work." *Id.* Thus, Plaintiff has alleged that Defendants knowingly required drivers to use their cell phones and failed to reimburse them sufficiently for such use.

Defendants' motion to dismiss Plaintiff's first cause of action is DENIED.

### b. Failure to Provide Meal and Rest Periods (Claim 2)

In his second cause of action, Plaintiff alleges that Defendants failed to provide meal and

---

[8] Defendants' evidentiary objections to this allegation, *see* MTD Reply at 3, are inappropriate at the motion to dismiss stage.

rest breaks under Labor Code sections 226.7 and 512.  Compl. ¶¶ 22–25.  California Labor Code §

226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest

or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard,

or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards

Board, or the Division of Occupational Safety and Health."  Further, Labor Code § 226.7(c)

provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period in

accordance with a state law . . . the employer shall pay the employee one additional hour of pay at

the employee's regular rate of compensation for each workday that the meal or rest or recovery

period is not provided."  Under Labor Code § 512(a), "[a]n employer may not employ an

employee for a work period of more than five hours per day without providing the employee with

a meal period of not less than 30 minutes."  "The employer satisfies this obligation if it relieves its

employees of all duty, relinquishes control over their activities and permits them a reasonable

opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them

from doing so."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012).  Moreover,

"the employer is not obligated to police meal breaks and ensure no work thereafter is performed."

*Id.*

Defendants argue that Plaintiff's meal and rest break claim fails because the Complaint

"does not identify any specific instance when, or how, Plaintiff was not provided either a meal or

rest break" and does not "identify a common policy that could establish class-wide liability."

MTD at 3; *id.* at 7–8.  Plaintiff counters that he alleges that Defendants were aware that the

drivers' schedules did not allow them time to take breaks and that Defendants instructed the

drivers that there was no such time.  MTD Opp. at 14–17, ECF 22.  Plaintiff specifically argues

that the Complaint "explicitly alleges that Cortez and the putative class members did not forgo

meal and rest breaks by choice; instead, UNFI prevented them from taking breaks."  *Id.* at 17.

The Court agrees with Defendants that the Complaint fails to plausibly allege a claim for

failure to provide meal and rest breaks.  Plaintiff alleges that "UNFI routinely required Plaintiff,

and similarly situated drivers, to work shifts longer than 5 hours without providing them rest

breaks or meal breaks."  Compl. ¶ 8.  To support this allegation, Plaintiff alleges that Defendants

18

"took no action to provide Plaintiff and similarly situated drivers with rest breaks or make rest breaks available; rather, UNFI stated that there was no time for such break." *Id.* He also alleges that "UNFI also knew or should have known that its drivers worked through meal and rest periods, because the delivery locations and schedules informed UNFI of their various timing requirements on unloading goods." *Id.*

These allegations are insufficient to demonstrate that Defendants impeded the drivers from taking such breaks. Defendants' failure to take affirmative action to supply meal and rest periods is not an allegation that Defendants impeded the drivers' opportunities to take such breaks altogether or that Defendants had a policy of not providing such breaks.[9] *See Morales v. Amazon.com, LLC*, No. 2:17-CV-1981-ODW, 2018 WL 3636888, at *3 (C.D. Cal. July 30, 2018) ("Simply alleging a failure to provide written notice [of break rights] is not enough to establish employer liability."). Likewise, the allegation that Defendants knew of the drivers' delivery locations and schedules and the related timing requirements is not an allegation that Defendants required a delivery timeline that provided drivers no opportunity to take a break. Though Defendants stated that "there was no time for such break," Compl. ¶ 8, this allegation alone is not plausible without supporting allegations that Defendants did not provide the opportunity to take such breaks, by using, for example, an overly tight delivery schedule. *Cf. Morales*, 2018 WL 3636888, at *3 (holding that allegations that employee felt "pressure" to work through breaks was insufficient to allege a violation of meal and rest break claim). And Plaintiff includes no allegations as to his own experiences from which the Court might infer a broader policy or practice by Defendants.

Moreover, Plaintiff's failure to plead at least one occasion on which he was impeded from taking a break likely runs afoul of the Ninth Circuit's decision in *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), *as amended* (Jan. 26, 2015), as

---

[9] *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2013 WL 5947010, at *3 (N.D. Cal. Nov. 5, 2013), is not to the contrary. There, the plaintiff alleged the defendant "failed to provide him with a second meal period" and "had a policy or practice of not providing second meal periods." *Id.* Here, Plaintiff does not allege that Defendants had such a policy or that they failed to offer the opportunity to take (*i.e.*, did not "provide") breaks.

discussed in more detail with respect to Plaintiff's third claim. *See, e.g.*, *Guerrero v. Halliburton Energy Servs.*, 2016 WL 6494296, *5–*6 (applying *Landers* to meal and rest break claim).

Because Plaintiff could cure these deficiencies with amendment, Defendants' motion to dismiss Plaintiff's second cause of action is GRANTED WITH LEAVE TO AMEND.

### c. Failure to Provide Accurate Written Wage Statements (Claim 3)

In his third cause of action, Plaintiff alleges that Defendants failed to provide accurate, itemized wage statements because the wage statements did not include (1) the drivers' actual gross or net wages or, for part of the class period, all hours worked; (2) the additional hour of compensation required for missed rest and meal breaks; (3) the accurate regular rate of pay for overtime compensation; and (4) for all employees, the social security number or employee identification number for the employees. Compl. ¶¶ 26–31.

Cal. Labor Code § 226(a) requires that employers provide wage statements that accurately itemize earnings, hours worked, applicable rates of pay, the name and address of the legal entity that is the employer, and, among other information, "the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number." To recover damages under Section 226, "an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute." *Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1142 (2011). The mere fact that the information was missing from the wage statement is not a cognizable injury. *See id.* at 1142–43; *accord Milligan v. Am. Airlines, Inc.*, 577 Fed. App'x. 718, 719 (9th Cir. 2014); *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 1004 (N.D. Cal. 2015).

As discussed with respect to claim two above and claim four below, the Court holds that Plaintiff does not plausibly allege that Defendants failed to provide compensation for hours worked, missed meal and rest breaks, or overtime. As to the social security number or employee id claim, Plaintiff does not allege that he or the other drivers suffered any injury as a result of this omission. Indeed, Plaintiff argues that he suffered injury only due to omissions related to the alleged meal and rest break and overtime/regular pay claims. Because mere omission alone is not sufficient, Plaintiff must amend to allege how this failure injured him and the other drivers.

For these reasons, Defendants' motion to dismiss Plaintiff's third cause of action is GRANTED WITH LEAVE TO AMEND.

### d.  Failure to Pay Hourly and Overtime Wages (Claim 4)

In his fourth cause of action, Plaintiff alleges that Defendants failed to pay regular and overtime wages under California Labor Code Sections 510, 558, and 1194 because Defendants allegedly did not (1) pay the drivers for all regular and overtime hours worked; and (2) did not include all remuneration—namely, the bonuses offered to drivers—when calculating the regular rate of pay, which led to inaccurate overtime compensation.  Compl. ¶¶ 32–34.

California Labor Code § 510(a) provides that "[e]ight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."  Under California Labor Code § 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  *See also* Cal. Labor Code § 558 (setting forth civil penalties for violations of provisions regulating hours and days of work).

In *Landers v. Quality Commcations, Inc.*, the Ninth Circuit held that in order to state a plausible claim for failure to pay overtime wages "at a minimum the plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek, or was not paid minimum wages."  771 F.3d 638, 646 (9th Cir. 2014), *as amended* (Jan. 26, 2015).  Though *Landers* concerned the Fair Labor Standards Act, this Court and others have held that *Landers*'s requirements apply to California Labor Code violations.  *See Bush v. Vaco Tech. Servs., LLC*, No. 17-CV-05605-BLF, 2018 WL 2047807, at *8 & n.6 (N.D. Cal. May 2, 2018) (citing *Freeman v. Zillow, Inc.*, No. SA-CV-1401843, 2015 WL 5179511, at *4 (C.D. Cal. Mar. 19, 2015); *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016)).  Under *Landers*, allegations that "plaintiffs 'regularly' or 'regularly and consistently' worked more

than 40 hours per week . . . fall short of the *Twombly/Iqbal* standard and are thus insufficient to state a claim for denial of overtime compensation." *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1191 (N.D. Cal. 2014).

Defendants argue that the Complaint does not comply with *Landers*'s requirements. *See* MTD at 8–10. Defendants claim that Plaintiff "provides no facts about the timing, length, or frequency of his allegedly unpaid hours worked," or enough to details to plausibly allege that he worked more than forty hours in a single work week. *Id.* at 9. As to Plaintiff's claims that Defendants did not properly calculate the regular rate of pay based on driver bonuses, Defendants claim that Plaintiff does not provide enough information about these bonuses, such as whether they were "nondiscretionary" or that "he earned a bonus during a period that he worked overtime hours," such that they would need to be included in any overtime calculation. *Id.*

Plaintiff argues that Defendants interpret *Landers* too narrowly and argues that he need not allege "an exact calendar week or particular instance of denied overtime or minimum wage." *See* MTD Opp. at 18–20. Plaintiff interprets his own allegations as demonstrating that Defendants "forced delivery drivers to skip mandatory meal and rest breaks, imposed schedules with timelines such that breaks practically could not be taken, and failed to provide breaks, give rise to the plausible inference that UNFI also discouraged delivery drivers from finishing outstanding tasks off schedule and clocking overtime." *Id.* at 19.

The Complaint alleges that, during part of Plaintiff's employment, Plaintiff and other drivers "routinely worked more than 8 hours a day and 40 hours a week and received no additional compensation," Compl. ¶ 10, and "Defendant required Plaintiff and other delivery drivers to work in excess of 8 hours per day and 40 hours per week," *id.* ¶ 32. As to bonuses, the Complaint alleges only that "Plaintiff, and other similarly situated drivers, routinely received driver bonuses," which were not included in their regular rate of pay. *Id.* ¶ 32.

The Court agrees with Defendants that Plaintiff's allegations do not plausibly allege a claim for failure to pay hourly and overtime compensation. First, the allegations do not meet the requirements under *Landers*—Plaintiff does not allege sufficient facts from which the Court could infer that Plaintiff worked more than forty hours in a week for which he was not paid overtime.

Though Plaintiff need not list a specific date and times, Plaintiff provides no facts about his work duties, his hours worked, or any other details relevant to the number of hours he worked at any time or in any week, much less details concerning other drivers. *Cf. Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015) (holding claim plausibly alleged where complaint "identified tasks for which [plaintiff] was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week"). As with his second claim, Plaintiff's allegation that Defendants knew about the drivers' delivery hours and schedules is not akin to alleging that the drivers' schedules required them to work over forty hours. *Cf. Varsam v. Lab. Corp. of Am.*, 120 F. Supp. 3d 1173, 1178 (S.D. Cal. 2015) (holding claim was plausible where complaint alleged that defendant "discouraged" class "from clocking overtime," "failed to schedule a sufficient number of [workers] for their locations," and employees regularly worked off the clock and were "required to not accurately record their time worked" (internal quotation marks omitted)). An allegation that the drivers "routinely" worked such hours is not enough, on its own. *See Perez*, 75 F. Supp. 3d at 1191.

Without allegations that Plaintiff and other drivers worked overtime, the failure to account for bonuses in the regular rate of pay becomes superfluous. But even were it relevant, the bare allegation that drivers received bonuses does not plausibly allege, without more, that such bonuses must be included in the regular rate of pay. Plaintiff is required to allege additional facts from which the Court can infer that the bonuses must be included in this calculation.

Because Plaintiff could possibly cure these deficiencies with amendment, Defendants' motion to dismiss Plaintiff's fourth cause of action is GRANTED WITH LEAVE TO AMEND.

### e. Failure to Timely Pay All Wages When Due (Claim 5)

In his fifth cause of action, Plaintiff alleges that Defendants failed to pay all wages when due under California Labor Code Sections 201, 202, 203, 204, and 204b because Defendants allegedly did not pay Plaintiff and the drivers for meal and rest breaks and overtime and regular wages. Compl. ¶¶ 35–38.

This claim is derivative of Plaintiff's second and fourth claims. Because the Court dismisses those claims, Defendants' motion to dismiss Plaintiff's fifth cause of action is

GRANTED WITH LEAVE TO AMEND.

### f. Unfair Competition (Claim 6)

In his sixth cause of action, Plaintiff alleges that Defendants engaged in unlawful business acts or practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, because of his five claims for California Labor Code violations. Compl. ¶¶ 39–43. Because the Court holds that Plaintiff alleges a violation of Labor Code § 2802 for Defendants' failure to indemnify, Defendants' motion to dismiss Plaintiff's sixth cause of action is DENIED.

### g. Civil Penalties Under PAGA (Claim 7)

In his seventh cause of action, Plaintiff seeks recovery of civil penalties for Defendants' Labor Code violations under California's Private Attorneys General Act of 2004, Cal. Lab. Code § 2698. Because the Court holds that Plaintiff alleges a violation of Labor Code § 2802 for Defendants' failure to indemnify, Defendants' motion to dismiss Plaintiff's seventh cause of action is DENIED.

### 2. Motion to Strike

Defendants move to strike portions of Plaintiff's Complaint, arguing that California law does not support Plaintiff's contentions that (1) the hour of compensation for missed meal and rest breaks must be included in wage statements; (2) Labor Code Section 226.3 applies in cases where an inaccurate wage statement is issued (as opposed to withheld entirely); (3) Section 204 and 204b apply even though Plaintiff does not allege applicable wage-payment timing violations; (4) pre-judgment interest on wage statement penalties is appropriate; and (5) treble damages are appropriate for the Section 206 claim. *See* MTD at 12–14.

As stated on the record at the hearing on the motion, the Court declines to grant the motion to strike on these issues at this stage. The Ninth Circuit in *Whittlestone* cautioned that courts should not resolve "disputed and substantial factual or legal issues in deciding a motion to strike." 618 F.3d at 973 (internal quotation marks and alterations omitted). Each of these questions is a disputed legal issue, for which both sides cite supporting case authority. *See* MTD at 10, 12–14; MTD Opp. at 21–23, 27–32. Likewise, Plaintiff must amend most of the relevant claims, and that amendment may cure several of these issues, particularly given Defendants' strong arguments on

several of these fronts. Moreover, the legal questions at issue here do not appear to be those that might cause over-burdensome discovery and mar the litigation in such a way that deciding these issues at this stage is necessary "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone*, 618 F.3d at 973 (quoting *Fogerty*, 984 F.2d at 1527). Finally, the Court notes that the California Supreme Court in its pending case *Stewart v. San Luis Ambulance, Inc.*, No. S246255, may soon resolve the first issue presented as to whether meal and rest break hours count as "wages" for wage statement claims.

For these reasons, the Court DENIES Defendants' motion to strike.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiff's motion to remand is DENIED;

(2) Defendants' motion to dismiss Plaintiff's first, sixth, and seventh causes of action is DENIED;

(3) Defendants' motion to dismiss Plaintiff's second, third, fourth, and fifth causes of action is GRANTED WITH LEAVE TO AMEND;

(4) Defendants' motion to strike is DENIED; and

(5) Unless otherwise stipulated, Plaintiff shall file a First Amended Complaint **on or before March 29, 2019.** Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in dismissal of Plaintiff's claims with prejudice.

**IT IS SO ORDERED.**

Dated: February 27, 2019

_____
BETH LABSON FREEMAN
United States District Judge