**WORKMAN LAW FIRM, PC**
Robin G. Workman (Bar #145810)
robin@workmanlawpc.com
Rachel E. Davey (Bar #316096)
rachel@workmanlawpc.com
177 Post Street, Suite 800
San Francisco, CA 94108
Telephone: (415) 782-3660
Facsimile: (415) 788-1028

*Attorneys for Plaintiffs Richard Cortez on behalf of himself and all others similarly situated*

**MARA LAW FIRM, PC**
David Mara, Esq. (SBN 230498)
Jill Vecchi, Esq. (SBN 299333)
7428 Trade Street
San Diego, CA 92121
Tel:   619-234-2833
Fax:   619-234-4048

*Attorneys for Plaintiffs Ronald Cooksey on behalf of himself and all others similarly situated*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD CORTEZ and RONALD COOKSEY, as individuals and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br>v.<br><br>UNITED NATURAL FOODS, INC. and UNITED NATURAL FOODS WEST, INC., California corporations; and DOES 1 through 100,<br><br>　　　　　Defendants. | Case No. 5:18-cv-04603-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; [PROPOSED] ORDER**<br><br>DATE:　January 23, 2020<br>TIME:　2:30 p.m.<br>CTRM: 3, 5th Floor |

**TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 23, 2020, at 2:30 p.m. or as soon thereafter as the matter can be heard in Courtroom 3 of the above entitled courthouse located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs Richard Cortez and Ronald Cooksey (hereinafter "Plaintiffs") will move this Court for an Order Granting Final Approval of Class Action Settlement. Defendants United Natural Foods, Inc. and United Natural Foods West, Inc., do not oppose this Motion.

This Motion is made pursuant to Federal Rule of Civil Procedure 23(h) and the Court's Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The basis of Plaintiffs' Motion is that the settlement is fair, reasonable, and adequate, as this Court preliminarily found in its order granting preliminary approval of the settlement.

This motion is based upon this notice, the accompanying Memorandum of Points and Authorities filed herewith; the accompanying Declaration of David Mara, Esq. filed herewith; the Declaration of Robin G. Workman, Esq. filed with the Motion for Order Granting Attorneys' Fees, Costs, and Class Representative Enhancement Payments; the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the filings on record in this case, and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: December 19, 2019                **MARA LAW FIRM, PC**

 

                                                By: /s/ *Jamie Serb*
                                                    Jamie Serb, Esq.
                                                    Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...............................................................................................................1

II. BACKGROUND/PROCEDURAL HISTORY ....................................................................1

    a.  The Cortez Action ..................................................................................................2

    b.  The *Cooksey* Action ...............................................................................................2

III. SUMMARY OF SETTLEMENT.......................................................................................3

IV. THE NOTICE PROCESS HAS BEEN SUCCESSFULLY COMPLETED ..........................4

    a.  Dissemination of Class Notices ..............................................................................4

    b.  No Objections and Only Five Requests for Exclusion – Resulting in a
99.9% Participation Rate in the Settlement ............................................................5

V.  DISCUSSION.....................................................................................................................5

    a.  The Settlement Meets the Standards Governing Final Approval .........................5

    b.  Settlement was Reached Through Arm's-Length Negotiations ...........................6

    c.  *Bluetooth* Factors are not Present Here...................................................................7

    d.  The Settlement is Fair .............................................................................................7

    e.  Sufficient Discovery and Investigation has Occurred..........................................11

    f.  Class Counsel are Experienced .............................................................................11

    g.  The Class Members' Response to the Settlement is Further Evidence That
the Settlement is Fair and Reasonable .................................................................12

    h.  The Provisional Certification of the Class for Settlement Purposes Should
Be Made Final.......................................................................................................12

    i.  The Court Should Approve the Settlement Administration Fee .......................12

VI. CONCLUSION.................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610, 622 (N.D. Cal. 1979) ................................................................................ 6

*Brinker Restaurant Corp. v. Superior Court*
   (2012) 53 Cal.4th 1004 .................................................................................................. 11, 12

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268, 1276 (9th Cir. 1992) ..................................................................................... 6

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96, 116 (2d Cir. 2005) ............................................................................................ 6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1026 (9th Cir. 1998) ............................................................................. 5, 6, 8

*Heritage Bond Litigation*,
   2005 WL 1594403 ................................................................................................................ 6

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935, 946 (9th Cir. 2011) ......................................................................................... 7

*Joel A. v. Giuliani*,
   218 F.3d 132, 138 (2d Cir. 2000) .......................................................................................... 5

*Kirkorian v. Borelli*,
   695 F. Supp. 446, 451 (N.D. Cal. 1988) ................................................................................ 6

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234, 1242 (9th Cir. 1998) ..................................................................................... 8

*Mandujano v. Basic Vegetable Products, Inc.*,
   541 F. 2d 832, 837 (9th Cir. 1976) ...................................................................................... 12

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ............................................................................................... 8

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*,
    688 F. 2d 615, 625 (9th Cir. 1982) ............................................................................................... 8

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) .......................................................................................................... 6

*Van Ba Ma v. Covidien Holding, Inc.*,
    2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) ................................................................. 8

**Statutes**

Federal Rule of Civil Procedure 23 ................................................................................................... 5

**TO THE HONORABLE COURT AND ALL COUNSEL OF RECORD:**

Plaintiffs Richard Cortez and Ronald Cooksey (hereinafter referred to as "Plaintiffs"), former employees for Defendants United Natural Foods, Inc. and United Natural Foods West, Inc. (hereinafter referred to as "Defendants") (collectively referred to as the "Parties"), submit this Motion for Final Approval of Class Action Settlement.

## I.   INTRODUCTION

This motion seeks final approval of a $3,000,000.00 proposed class action settlement achieved on behalf of 5,164 Class Members. On October 4, 2019, the Court preliminarily approved the settlement and ordered the dissemination of the class notice to Class Members. The notice period ended on December 13, 2019. In response to the notice, no Class Members objected to the settlement and only five Class Members requested exclusion from the settlement – resulting in a 99.9% participation rate in the settlement. The estimated average settlement payment to each Class Member in the Non-Exempt Subclass is $423.21 and the highest estimated payment is $1,338.56. The estimated average settlement payment to each Class Member in the Driver Subclass is $562.75 and the highest estimated payment is $1,036.92. The estimated average settlement payment to each Class Member in the Exempt Subclass is $84.58 and the highest estimated settlement payment is $104.99. *See* Declaration of Tina Chiango ("Chiango Decl."), ¶ 16.

The Class Members' response supports the Court's finding that the settlement is fair, reasonable, and adequate. For the reasons that follow, it is respectfully requested the Court grant this motion and find the settlement to be fair, reasonable, and adequate.

## II.   BACKGROUND/PROCEDURAL HISTORY

Defendant United Natural Foods, Inc. ("UNFI") is a wholesale distributor of natural and organic foods in the United States and Canada. United Natural Foods West, Inc., is a subsidiary of Defendant UNFI, operating various distribution centers and employing warehouse employees, short and long-haul truck drivers, and general administration staff in California. Tony's Fine Foods and Alberts Organics, two affiliates of UNFI, operate additional distribution centers in California. Nor-Cal Produce is a division of Albert's Organics.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

- 1 -

Plaintiff Cortez worked as a delivery driver for Defendants from June 2016 to August 2017. Plaintiff Cortez delivered Defendants' products from Defendants' Gilroy, California location. Plaintiff Cooksey worked for Defendants in 2016 as an Order Selector at Defendants' warehouse in Moreno Valley, California.

### a. The Cortez Action

On June 18, 2018, Plaintiff Cortez filed a civil action in Santa Clara County Superior Court, Case No. 18CV329895, on behalf of himself and "two subclasses of persons in the employ of Defendants in California within four years of the filing of the action[:]" (A) delivery drivers; and (B) those persons employed by Defendants to whom Defendants issued wage statements. Plaintiff Cortez alleged that Defendants failed to: (1) compensate delivery drivers for the cost of and use of their personal cell phones; (2) provide delivery drivers with rest and meal breaks, and compensation for missed rest and meal breaks; (3) timely pay delivery drivers for all hours worked and overtime compensation owed; (4) properly calculate the regular rate of pay for delivery drivers, and therefore pay all regular and overtime wages owed; and (5) provide accurate wage statements as required by Labor Code section 226(a)(1)-(2) and (5) for delivery drivers. In addition, Plaintiff Cortez alleged that for all employees, Defendants do not list either the last four digits of the social security number or the employee's identification number on employees' wage statements in violation of Labor Code section 226(a)(7). Plaintiff Cortez also alleged that the Labor Code violations violated California Business & Professions Code section 17200, et seq., applicable Industrial Welfare and Commission Wage Orders, and the PAGA. Mara Decl. ¶ 9.

On July 30, 2018, Defendants filed their Notice of Removal of the *Cortez* action. Defendants also filed a motion to dismiss. Pursuant to this Court's order, granting in part Defendants' motion to dismiss and denying the motion to remand, Cortez filed a First Amended Class Action Complaint on March 29, 2019. Mara Decl. ¶ 10.

### b. The *Cooksey* Action

Plaintiff Cooksey filed his class action complaint on June 19, 2018, in the Sacramento County Superior Court on behalf of Defendants' non-exempt employees. Defendant subsequently removed the *Cooksey* Action to the Eastern District of California. Plaintiff Cooksey alleged the following causes

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

- 2 -

of action on behalf of the non-exempt employees: (1) failure to pay straight time wages; (2) failure to pay overtime; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to authorize and permit recovery periods; (6) failure to provide itemized wage statements; and (7) failure to pay all wages due at termination. Mara Decl. ¶ 11.

On September 20, 2019, the Court granted leave for Plaintiff Cortez to amend his complaint to add Plaintiff Cooksey. This amendment combined the *Cooksey* Action with the *Cortez* Action, incorporating Plaintiff Cooksey's claims alleged in the *Cooksey* Action and his PAGA notification into the *Cortez* Action. *See* Dkt.# 60. The Second Amended Complaint was filed September 23, 2019. *See* Dkt.# 61.

### III.   SUMMARY OF SETTLEMENT

As described in the motion for Preliminary Approval and stated in the Settlement Agreement, Defendants shall pay $3,000,000.00 (referred to as the "Gross Settlement Amount" or "GSA") which includes: (1) settlement administration costs not to exceed $35,000.00; (2) Class Representative General Release Payments not to exceed $5,000.00 to each Plaintiff/Class Representative; (3) attorneys' fees not to exceed $750,000.00 (25% of the GSA); (4) litigation costs not to exceed $30,000.00[1]; and (5) a PAGA payment to the Labor and Workforce Development Agency for its 75% share ($75,000.00) of the settlement allocated to PAGA penalties ($100,000.00). The difference between the allotted amounts in the Settlement Agreement and the actual costs incurred or unawarded by the Court will become part of the Net Settlement Amount. All of these payments are subject to the Court's approval. Mara Decl. ¶ 12.

After the above amounts are subtracted from the GSA, the remaining portion of the GSA – referred to as the Net Settlement Amount ("NSA") – shall be available for distribution to Participating Class Members. After subtracting the above amounts, the NSA available for individual settlement payments is approximately $2,112,918.81. Mara Decl. ¶ 13.

The Settlement Class is comprised of the following three Subclasses:
1. The "**Driver Subclass**" means all individuals employed as drivers in California by Defendants or their affiliates Tony's Fine Foods, NorCal Produce, or Albert's Organics from June 18, 2014 to October 4, 2019;

---

[1] Class Counsel's actual litigation costs totaled $17,081.19.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

- 3 -

2. The "**Non-Exempt Subclass**" means all individuals employed as non-exempt non-driver positions in California by Defendants or their affiliates Tony's Fine Foods, NorCal Produce, or Albert's Organics from June 18, 2014 to October 4, 2019;
3. The "**Exempt Subclass**" means all individuals employed as exempt employees in California by Defendants or their affiliates Tony's Fine Foods, NorCal Produce, or Albert's Organics from June 18, 2017 to October 4, 2019.

The Settlement Administrator will allocate the Individual Settlement Payments to Participating Class Members in accordance with each Participating Class Member's pro rata share of pay periods during the period applicable to the relevant Subclass. Per the Settlement, the allocation of the NSA is as follows: 20% to Participating Class Members of the Driver Subclass; 78% to Participating Class Members of the Non-Exempt Subclass; and 2% to Participating Class Members of the Exempt Subclass. All Individual Settlement Payments, except for those of the Exempt Subclass, whose Settlement Payments shall be allocated solely to penalties, shall be allocated as follows: one-third as wages (reported on IRS Form W-2) and two-thirds penalties and interest (reported on IRS Form 1099). Defendants are solely responsible for the employer's share of payroll taxes on any amounts allocated as wages, which shall be paid separately from the GSA.

As discussed below, the settlement has been a success, with a 99.9 % participation rate (only 5 requests for exclusion) and no objections to the settlement submitted by Class Members. Chiango Dec. ¶ 16. The Class response and settlement shares to class members further demonstrate that the settlement is fair, reasonable and adequate.

## IV.   THE NOTICE PROCESS HAS BEEN SUCCESSFULLY COMPLETED

### a. Dissemination of Class Notices

The Court granted Preliminary Approval on October 4, 2019. At that time RG/2 Claims Administration, LLC ("RG/2") was appointed by the Court as the Settlement Administrator. RG/2 has complied with the Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail and email. Mara Decl. ¶ 14. After receiving the Class Data from Defendants, names and addresses contained in the Class List were processed against the National Change of Address ("NCOA") database, maintained by the U.S. Postal Service, for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing of the Class Notices. Chiango

Decl. ¶ 8. The Class Notices were mailed to all 5,164 Class Members on October 29, 2019. Chiango Decl. ¶ 9.

After conducting a skip trace, RG/2 re-mailed 268 Class Notices that were returned due to bad addresses. Chiango Decl. ¶ 10-11. Fifty Class Notices were ultimately deemed undeliverable by U.S. Mail. Chiango Decl. ¶ 12. In addition, throughout the notice process RG/2 has operated a toll-free telephone number for Class Members to call with inquiries concerning the settlement. RG/2 has also maintained a website with the settlement documents available for Class Members to access. Chiango Decl. ¶¶ 2-6.

### b. No Objections and Only Five Requests for Exclusion – Resulting in a 99.9% Participation Rate in the Settlement

The deadline to submit an objection to the settlement or request for exclusion from the settlement was December 13, 2019. No objections have been filed with the Court or submitted to the Settlement Administrator and only five requests for exclusion from the settlement was received by the Settlement Administrator. Chiango Decl. ¶¶ 13-15. One Class Member disputed the number of workweeks allocated to her, submitting evidence to support her dispute. Her allocation was adjusted and Class Counsel informed her of the increased allocation. Mara Decl. ¶ 15; Chiango Decl. ¶ 14. All Class Members who did not submit a request for exclusion will receive a settlement payment. Therefore, 99.9% of the Class are Participating Class Members and will receive a Settlement Payment. Chiango Decl. ¶ 16.

## V.   DISCUSSION

### a. The Settlement Meets the Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

- 5 -

litigation is concerned." *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and, the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendants' pay structures and wage and hour policies. These efforts culminated in the Parties reaching an agreement to settle. The settlement amount takes into consideration the risks with regard to certifying Plaintiffs' claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### b. Settlement was Reached Through Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); se*e also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

On July 10, 2019, the Parties participated in private mediation with well-respected wage and hour mediator, Jeffrey Ross. Although professional, the Parties engaged in adversarial, arm's-length negotiations, in which counsel zealously advocated the Parties' respective positions. Despite their

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

efforts, the Parties were not able to reach an agreement at the mediation. However, following mediation, the Parties accepted the mediator's proposal provided by Mr. Ross. After weeks of further negotiations, the Parties agreed to the terms included in the Settlement. Mara Decl. ¶ 16.

### c. *Bluetooth* Factors are not Present Here

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This settlement passes the *Bluetooth* test. The NSA is approximately three times larger than the fees requested by Class Counsel, which is the accepted federal benchmark of 25% of the GSA.[2] Additionally, although the settlement agreement states that Defendant will not object to attorney fees up to 25% of the GSA, any amount requested by Class Counsel and not awarded by the Court shall become part of the NSA and distributable to Participating Class Members. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

### d. The Settlement is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal.

---

[2] Class Counsel is requesting $750,000.00 (25% of the GSA). The NSA is approximately $2,112,918.81.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

- 7 -

2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation.).

Plaintiffs allege drivers are entitled to overtime compensation for overtime hours worked prior to January 1, 2017. Although Defendants always required drivers to keep track of their hours worked, and reflected the hours on drivers' wage statements, Plaintiffs allege that, prior to January 1, 2017, Defendants did not pay drivers overtime compensation for hours worked over 40 per week or 8 per day. Starting January 1, 2017, Defendants began paying drivers overtime compensation, which Defendants allege was to allow Defendants to be more competitive in recruiting and retaining drivers. Defendants further contend that this change was not due to any perceived violation of law. Mara Decl. ¶ 17.

With respect to meal and rest periods, Plaintiffs allege that Defendants require drivers to work more than five hours per day and ten hours per day without providing drivers the opportunity to take off-duty meal periods. Plaintiffs assert that the driver routes set by Defendants, the customer requirements, the inability to park the delivery trucks, and the demands Defendants place on drivers are such that drivers are not afforded an opportunity to take off-duty meal periods. Plaintiffs allege

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

that these policies and procedures apply uniformly to all drivers. Plaintiffs contend PeopleNet, the on-board routing system used by Defendants, will show when the drivers were at customer locations performing their duties en route and unable to take breaks scheduled by Defendants. Plaintiffs also assert that drivers uniformly did not receive second meal breaks when drivers worked more than 10 hours per day. Mara Decl. ¶ 18.

Plaintiffs alleged that drivers used their personal cellphones throughout the workday to make and receive calls, texts, and emails to and from dispatch and customers, and to use web-based applications for navigating through traffic for deliveries. Prior to July 2017, Defendants did not reimburse drivers for this cellphone usage. In July 2017, Defendants began paying drivers $20 per month as a reimbursement for this use. Plaintiffs allege that this amount is insufficient to cover costs drivers incur to purchase and use personal cellphones to discharge their work duties. Mara Decl. ¶ 19.

Plaintiffs assert that, because there were a limited number of timeclocks available, non-exempt employees had to wait in long lines at the beginning of their shifts, and when clocking in from meal periods, and that Defendants did not pay employees for this time. Plaintiffs allege that this results in not only Defendants failing to pay all wages owed to non-exempt employees, but also Defendants failing to provide full 30-minute meal periods to warehouse employees. Plaintiffs also assert that Defendants never provided second meal periods when non-exempt employees work more than 10 hours per day. Plaintiffs allege Defendants failed to provide non-exempt employees with full net 10-minute rest periods because Defendants did not take into consideration the time it takes employees to travel to and from Defendants' break rooms. Plaintiffs allege that Defendants failed to provide non-exempt employees with relief from the heat in the summer months. Mara Decl. ¶ 20.

Plaintiffs also allege Defendants failed to provide accurate wage statements as required by Labor Code section 226(a) as a result of Defendants' failure to pay the extra hour of compensation when non-exempt employees and drivers were not provided meal and rest periods, and Defendants' failure to pay drivers for all overtime compensation owed for the entire Class Period. As a result of these claims, Plaintiffs further allege that the wage statements failed to set forth total hours worked, gross wages earned, and net wages earned, in violation of Labor Code section 226(a), subsections (1)-(2), and (5). Plaintiffs also allege Defendants failed to set forth the last four digits of employees' social

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

- 9 -

security number or employee identification number, in violation of section 226(a)(7). Mara Decl. ¶ 21.

Defendants dispute Plaintiffs' claims, insisting that they, at all times, complied with the California Labor Code. With respect to Plaintiffs' meal and rest period claims, Defendants assert that they have in place policies and practices of providing meal and rest periods and paying premium pay for missed meal and rest periods. Defendants also assert that they paid $2,402,957 in premium pay for missed breaks during the Class Period. Defendants also assert that with respect to drivers, they had no obligation to provide drivers meal and rest periods because meal and rest period laws are preempted by federal law as supported by a recent determination by the Federal Motor Carrier Safety Administration. Defendants deny that they did not provide a sufficient number of timeclocks, citing their policies which provide additional time for meal periods to compensate for any time spent waiting in line to clock-in. Mara Decl. ¶ 22.

Regarding Plaintiffs' overtime claims, Defendants contend that drivers and certain non-exempt employees are exempt from the overtime requirements because the employees are subject to the collective bargaining agreement exemption in Labor Code section 514. Defendants further assert that drivers are exempt from daily overtime under the California state motor carrier exemption. In addition, Defendants argue that, although not required to do so, Defendants paid drivers overtime for hours worked over forty in a workweek. Mara Decl. ¶ 23.

Regarding Plaintiffs business expense claim, Defendants argue that it is neither required nor expected that employees use their personal cellphones for work-related purposes. Defendants also assert that Plaintiffs' valuation of the expense reimbursement claim is too high. Defendants also assert that drivers need not use their cellular phones for work, as drivers can communicate through the on-board computer system provided by Defendants. Defendants voluntarily implemented a reimbursement program in June 2017 where drivers were reimbursed $20 for any use of their personal cellphones for work-related purposes. Mara Decl. ¶ 24.

With respect to Plaintiffs' wage statement claim, Defendants contend that they complied with Labor Code section 226. Defendants assert that the ADP provided unique identification (i.e. "file") numbers displayed on wage statements satisfy Labor Code section 226(a)(7). Defendants further argue

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

- 10 -

Plaintiffs would be unsuccessful with their wage statement claim, arguing that Plaintiffs would not be able to establish any injury stemmed from the alleged deficiencies sufficient to allow recovery under California Labor Code 226(e). Mara Decl. ¶ 25.

Defendants also state that they intend to vigorously contest class certification and Plaintiffs' claims on the merits, arguing that Plaintiffs' claims are not suitable for certification. While Plaintiffs do not agree with Defendants' arguments regarding certification or their defenses on the merits to Plaintiffs' claims, Plaintiffs recognize that there is a risk that the Court and/or jury will agree with Defendants and limit or eliminate Class Members' recovery. Mara Decl. ¶ 26.

### e. Sufficient Discovery and Investigation has Occurred

Class Counsel conducted a thorough investigation into the facts of this action, including extensive review of documents and data, as well as interviews of many Class Members. Defendants produced a significant amount of data and documents. The materials included time records and payroll data, containing information regarding periods of employment, rates of pay, and premium payments, as well as wage and hour policies, handbooks, and other relevant documents and information. Plaintiffs retained an expert to conduct an analysis and extrapolation of the payroll data and time records to calculate Defendants' potential exposure for Plaintiffs' claims. After conducting an analysis of the materials Defendants produced, Class Counsel also drew on their extensive experience in similar cases to assess the strengths and weaknesses of Plaintiffs' claims. This discovery allowed the Parties to assess the merits and value of Plaintiffs' claims and defenses thereto, if a settlement was not reached. Based on their review and independent investigation into the facts and claims asserted in this matter, Class Counsel believe that this settlement is fair, reasonable, and adequate and is in the best interest of the class. Mara Decl. ¶ 27.

### f. Class Counsel are Experienced

Class Counsel's experience in complex class action matters is extensive. Mara Decl. ¶¶ 1-8; Workman[3] Decl. ¶¶ 11 & 12. Indeed, Mr. Mara from the Mara Law Firm, PC was class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.,* which is the subject case in the landmark decision

---

[3] *See* Declaration of Robin G. Workman, Esq. filed with the Motion for Order Granting Attorneys' Fees, Costs, and Class Representative Enhancement Payments.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

- 11 -

of *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004. Mara Decl. ¶ 4. Ms. Workman's work also resulted in several published opinions addressing significant issues in the wage and hour field. Workman Decl. ¶ 11. Class Counsel have prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims present in this case, and the defenses thereto, and to evaluate settlement versus trial on a fully informed basis. Mara Decl. ¶¶ 1-8; Workman Decl. ¶¶ 4, 11 & 12. This experience instructed Class Counsel on the risks and uncertainties of further litigation and guided their determination to endorse the proposed settlement.

### g. The Class Members' Response to the Settlement is Further Evidence That the Settlement is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). Here, not a single Class Member has objected to the settlement and only five Class Members requested to be excluded from the settlement, resulting in a 99.9% participation rate in the settlement. Chiango Decl. ¶¶ 13, 15, 16. The lack of objections and low number of requests for exclusion evidences the Class Members' endorsement of this non-reversionary settlement.

### h. The Provisional Certification of the Class for Settlement Purposes Should Be Made Final

Plaintiffs respectfully request that the Court enter an order making final its certification of the proposed Class for settlement purposes. In the Court's October 4, 2019 Order, it determined that, for the purposes of settlement, the proposed Settlement Class met the requirements of Rule 23. The circumstances considered by the Court at that time remain the same. Accordingly, for the reasons set forth in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and in the Court's Preliminary Approval Order, which are incorporated herein by reference, final certification of the proposed class should be ordered for settlement purposes.

### i. The Court Should Approve the Settlement Administration Fee

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

- 12 -

The Parties agreed to hire RG/2 Claims Administration, LLC ("RG/2") to be the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. RG/2 was responsible for mailing the Class Notice to Class Members, obtaining better addresses for undeliverable Class Notices, responding to Class Member inquiries, providing weekly status reports to all counsel, receiving all communications from the Class Members, and providing a declaration documenting its duties and responsibilities to ensure the Class Members were given notice of the Settlement. Chiango Decl. ¶ 3. Following the grant of final approval, RG/2 will continue to calculate the payments to Participating Class Members, calculate the withholding taxes, and transmit to the appropriate government agencies, send the individual Settlement Shares to Participating Class Members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as described in the settlement agreement. Chiango Decl. ¶ 3. RG/2's fee of $35,000.00 for services rendered and to be rendered is fair and reasonable and should be granted. Chiango Decl. ¶ 17.

## VI. CONCLUSION

In light of the foregoing, Plaintiffs request the Court find the Settlement fair, reasonable, and adequate and grant final approval of the Settlement.

Date: December 19, 2019                              WORKMAN LAW FIRM, PC

                                        By:   /s/Robin G. Workman
                                              Robin G. Workman
                                              *Attorneys for Plaintiffs Richard Cortez on behalf of himself and all others similarly situated*

Date: December 19, 2019                              MARA LAW FIRM, PC

                                        By:   /s/David Mara
                                              David Mara
                                              *Attorneys for Plaintiffs Ronald Cooksey on behalf of himself and all others similarly situated*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT