United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| RICHARD B. CORTEZ, et al., | Case No.  18-cv-04603-BLF |
| Plaintiffs, | **ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS** |
| v. | |
| UNITED NATURAL FOODS, INC., et al., | |
| Defendants. | [Re: ECF 66, 69] |

In this putative class action, Plaintiffs Richard B. Cortez and Ronald Cooksey (together, "Plaintiffs") brought this action against Defendants United Natural Foods, Inc. and United Natural Foods West, Inc. (together, "Defendants") for various California state law wage and hour violations.  *See generally* Second Am. Class Action Compl. ("SAC"), ECF 61.

Two motions are before the Court: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement, *see* Appr. Mot., ECF 69; and (2) Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments, *see* Fees Mot., ECF 66.  For the reasons discussed below and those stated on the record at the hearing on the motions, the motions are GRANTED.

## I.    BACKGROUND

### A.    Facts

Plaintiff Richard B. Cortez was employed as a delivery driver for Defendants from June 2016 to August 2017.  SAC ¶ 19.  Plaintiff Ronald Cooksey was employed as an order selector by the Defendants in 2016.  SAC ¶ 20.

Plaintiffs allege that Defendants required Cortez and other similarly situated drivers to use

United States District Court
Northern District of California

1    their personal cell phones for work-related calls.  SAC ¶ 23.  Prior to July 2017, Defendants did

2    not reimburse Cortez or other delivery drivers for any of the costs associated with the use of their

3    personal cell phone and internet usage.  SAC ¶ 23.  Starting in July 2017, Defendants began

4    reimbursing Cortez and other drivers at a rate of $20 per month for their personal cell phone

5    usage.  SAC ¶ 23.  Plaintiffs allege that this reimbursement was not sufficient to reimburse Cortez

6    or the other delivery drivers for the costs incurred to use their personal cell phones.  SAC ¶ 23.

7         In addition, Plaintiffs allege that Defendants had a policy or practice of requiring Cortez

8    and similarly situated delivery drivers to work more than eight hours a day or forty hours a week.

9    SAC ¶ 27.  Toward the end of his employment, Plaintiffs allege that Defendants began to pay

10   Cortez and other similarly situated delivery drivers for all hours worked, which was reflected in

11   their wage statements and showed that Cortez routinely worked in excess of ten hours of overtime

12   a week.  SAC ¶ 27.  Prior to this, however, Cortez and other similarly situated delivery drivers did

13   not receive overtime or additional compensation for all hours worked.  SAC ¶ 28.  Plaintiffs,

14   moreover, allege that Defendants had a policy or practice of paying non-discretionary bonuses if

15   certain criteria, set by Defendants, was met.  SAC ¶ 29.  Plaintiffs allege that Defendants failed to

16   pay Cortez and other similarly situated deliver drivers who met the criteria these non-discretionary

17   bonuses.  SAC ¶ 29.  Plaintiffs allege that through the failure to pay these non-discretionary

18   bonuses and proper overtime wages at the correct overtime rate, Defendants failed to pay all

19   wages owed.  SAC ¶ 30.

20        Plaintiffs also allege that Defendants had a policy or practice of requiring Plaintiffs and

21   other similarly situated non-exempt employees to work through meal periods, work more than five

22   hours without a meal period, or work more than ten hours without a second meal period.  SAC

23   ¶ 24.  Plaintiffs allege that they did not receive an additional hour of compensation when this

24   happened as required by the California Labor Code.  SAC ¶¶ 24, 26.  Additionally, Plaintiffs

25   allege that Defendants have a policy or practice of requiring Plaintiffs and other similarly situated

26   non-exempt employees to work through rest periods or work more than four hours without a rest

27   period.  SAC ¶ 25.  When this happened, Defendants did not pay Plaintiffs or other similarly

28   situated non-exempt employees an additional hour of compensation.  SAC ¶¶ 25-26.  Plaintiffs,

moreover, allege that Defendants did not keep accurate records or provide accurate wage statements as required by the California Labor Code.  SAC ¶ 26.

Plaintiffs also allege that Defendants' wage statements violated the California Labor Code because they did not include the last four digits of an employee's social security number or the employee's identification number.  SAC ¶ 31.  Plaintiffs allege that their wage statements did not include this information.  SAC ¶ 31.

**B.    Procedural History**

On June 18, 2018, Cortez commenced this putative class action by filing the class action complaint in Santa Clara County Superior Court.  Not. of Removal ¶ 1, ECF 1.  Defendants removed the action to federal court on July 30, 2018, asserting that the Court had diversity jurisdiction under the Class Action Fairness Act.  *See* Not. of Removal. ¶¶ 6-33.  On February 27, 2019, the Court denied Cortez's motion to remand, and granted in part and denied in part Defendants' motion to dismiss or strike.  ECF 41.  Cortez was given leave to amend the causes of action that were dismissed.  ECF 41, at 25.

On June 19, 2018, Cooksey file a putative class action complaint against Defendants in the Sacramento County Superior Court.  ECF 60, at 1.  On June 30, 2018, that action was removed to the U.S. District Court for the Eastern District of California.  ECF 60, at 1.

On September 20, 2019, the Court granted the stipulated request of the parties for leave to file a second amended complaint, which would combine the claims from the Cortez action and Cooksey action, and add Cooksey as a named plaintiff.  ECF 60, at 2.  On September 23, 2019, Plaintiffs filed the Second Amended Class Action Complaint ("SAC").  ECF 61.  Based on the above allegations, Plaintiffs assert nine causes of action: (1) violation of California Labor Code § 2802; (2) violation of California Labor Code § 226.7 and applicable Industrial Welfare and Commission ("IWC") Wage Order § 12; (3) violation of California Labor Code § 226.7 and applicable IWC Wage Order § 11; (4) failure to provide accurate, itemized wage statements in violation of California Labor Code § 226(a); (5) failure to pay regular and overtime wages pursuant to California Labor Code §§ 510, 558, and 1194; (6) failure to pay wages when due pursuant to California Labor Code §§ 201, 202, 203, 204, and 204(b); (7) unlawful, unfair, and

1    fraudulent business practices pursuant to California Business and Professions Code § 17200, *et*

2    *seq.*; (8) violation of California Labor Code Private Attorneys General Act of 2004 ("PAGA"),

3    Cal. Lab. Code § 2698; and (9) failure to provide recovery periods pursuant to California Labor

4    Code § 226.7 and California Code of Regulations, Title 8, § 3395.  SAC ¶¶ 38-100.

**C.    Settlement Agreement, Allocation Plan, and Notice Plan**

6          On October 4, 2019, the Court granted Plaintiffs' Motion for Preliminary Approval of

7    Class Settlement and approved the notice plan.  *See* Order Granting Prelim. Appr. ("Prelim.

8    Order"), ECF 65.  The Court approved the following class:

> All individuals employed as (i) non-exempt drivers in California by
> Defendants or their affiliates Tony's Fine Foods, NorCal Produce, or
> Albert's Organics from June 18, 2014 through the date this order is
> signed (the "Driver Subclass"); (ii) nonexempt non-driver positions
> in California by Defendants or their affiliates Tony's Fine Foods,
> NorCal Produce, or Albert's Organics from June 18, 2014 through
> the date this order is signed (the "Non-Exempt Subclass"); and (iii)
> exempt employees in California by Defendants or their affiliates
> Tony's Fine Foods, NorCal Produce, or Albert's Organics from June
> 18, 2017 to May 10, 2019 (the "Exempt Subclass") (collectively
> referred to as "Class Members").

16   Prelim. Order ¶ 1.  *See* Decl. of Robin G. Workman, Ex. C, Class Action Settlement Agreement

17   and Release (the "Agreement"), ECF 53-2.

18         For settlement purposes, the Court appointed Plaintiffs as Class Representatives and Robin

19   Workman of the Workman Law Firm, P.C. and David Mara of the Mara Law Firm as Class

20   Counsel.  Prelim. Order ¶ 3.  In addition, the Court appointed RG/2 Claims Administration, LLC

21   ("RG/2") as the settlement administrator.  Prelim. Order ¶ 4.

22         Under the Settlement Agreement, Defendants agreed to pay $3,000,000 (the "Gross

23   Settlement Amount") "in full satisfaction of all claims arising from the [Cooksey and Cortez

24   actions]."  Agreement §§ 6, 24.  The Net Settlement Amount is defined as the balance of the Gross

25   Settlement Amount remaining after deducting payments for (a) class representative enhancement

26   payments not to exceed $5,000 each; (b) settlement administration costs not to exceed $35,000; (c)

27   a PAGA payment to the Labor and Workforce Development Agency ("LWDA") for its 75% share

28   ($75,000) of the Settlement allocated to PAGA penalties of $100,000; (d) Class Counsel's fee

United States District Court
Northern District of California

1    award not to exceed $750,000; and (e) Class Counsel's cost award not to exceed $30,000.

2    Agreement §§ 25, 48-53; *see* Decl. of David Mara ("Mara Appr. Decl.") ¶ 12, ECF 69-1.  The Net

3    Settlement Amount is the maximum amount that will be available for distribution to Participating

4    Class Members – *i.e.*, Settlement Class Members who do not submit valid opt-out statements.

5    Agreement §§ 20, 24.

6         Under the Agreement, RG/2 will allocate the Individual Settlement Payments to each

7    Participating Class Member in accordance with the pro rata share of pay periods during the period

8    applicable to the relevant subclass.  Agreement § 30; *see* Appr. Mot. 4; Mara Appr. Decl. ¶ 14.

9    Per the Agreement, the Net Settlement Amount will be allocated as follows: 20% to the Driver

10   Subclass, 78% to the Non-Exempt Subclass, and 2% to the Exempt Subclass.  Agreement § 55.

11   All Individual Settlement Payments to the Exempt Subclass will be allocated solely as penalties.

12   Agreement § 56.  All Individual Settlement Payments to the other two subclasses will be allocated

13   as follows: one-third as wages and two-thirds as penalties and interest.  Agreement § 56.  Under

14   the Agreement, Defendants are responsible for paying the employer's share of payroll taxes on

15   any amounts allocated as wages, and these payroll taxes will be paid separately from the Gross

16   Settlement Amount.  Agreement § 56.

17        The Court preliminarily approved, and RG/2 and the parties complied with, the following

18   notice process: Defendants provided RG/2 with the identifying and contact information for all

19   Class Members; RG/2 mailed notice to Class Members' last known address; for any returned

20   notice, RG/2 re-mailed notice to the forwarding address; and, where a forwarding address was not

21   provided, RG/2 attempted to determine the correct address using a skip-trace and then re-mailed

22   notice to that address.  Agreement §§ 62-65.  RG/2 also sent notice by email, operated a toll-free

23   telephone number, and maintained a website.  Mara Appr. Decl. ¶¶ 2-6, 14.

24        On October 29, 2019, RG/2 mailed notices to 5,164 class members.  Decl. of Tina M.

25   Chiango ("Chiango Appr. Decl.") ¶ 9, ECF 69.  Of the notices sent, 330 notices were returned and,

26   after conducting a skip-trace, RG/2 re-mailed 268 notices.  Chiango Appr. Decl. ¶¶ 10-11.  Fifty

27   notices were ultimately deemed as undeliverable.  Chiango Appr. Decl. ¶ 12.

28        The deadline to submit an objection or request exclusion from the settlement was

December 19, 2019.  Appr. Mot. 5.  No objections have been filed or submitted to RG/2, and five requests for exclusion were submitted.  Chiango Appr. Decl. ¶¶ 13-15; Appr. Mot. 5.  This represents a 99.9% participating rate, and all Class Members who did not submit a request for exclusion will receive a settlement payment.  Chiango Appr. Decl. ¶ 16; *see* Appr. Mot. 5.  The estimated average settlement payment to each Class Member in the Non-Exempt Subclass is $423.21 and the highest estimated payment is $1,338.56, the estimated average settlement payment to each Class Member in the Driver Subclass is $562.75 and the highest estimated payment is $1,036.92, and the estimated average settlement payment to each Class Member in the Exempt Subclass is $84.58 and the highest estimated settlement payment is $104.99.  Chiango Appr. Decl. ¶ 16.

On January 23, 2020, the Court held a hearing on the motions and no objectors appeared at the hearing.

## II.    MOTION FOR FINAL APPROVAL OF SETTLEMENT

To grant final approval of the class action settlement, the Court must determine that (1) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (2) the settlement reached on behalf of the class is fair, reasonable, and adequate.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### A.    The Class Meets the Requirements for Certification under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule –

United States District Court
Northern District of California

1    those designed to protect absentees by blocking unwarranted or overbroad class definitions –

2    demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

3    620 (1997).

4        In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification

5    must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614.  Plaintiffs

6    seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to

7    class members predominate over any questions affecting only individual members" and (2) "a

8    class action is superior to other available methods for fairly and efficiently adjudicating the

9    controversy."  Fed. R. Civ. P. 23(b)(3).

10       The Court concluded that these requirements were satisfied when it granted preliminary

11   approval of the class action settlement.  *See generally* Prelim. Order.  The Court is not aware of

12   any new facts which would alter that conclusion.  However, the Court reviews the Rule 23

13   requirements again briefly, as follows.

14       First, as to the Rule 23(a) prerequisites, the Court has no difficulty in concluding that the

15   proposed class is too numerous because there are over 5,000 Class Members.  Chiango Appr.

16   Decl. ¶ 9; *see Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts

17   have routinely found the numerosity requirement satisfied when the class comprises 40 or more

18   members.").  The commonality requirement is also met because questions of law and fact common

19   to the Settlement Class predominate over individualized questions.  These questions of law and

20   fact include: whether Defendants have a policy or practice of failing to provide meal or rest

21   periods and failed to pay employees compensation for the lack of meal or rest periods; whether

22   Defendants had a policy or practice of failing to compensate Class Members for time worked;

23   whether Defendants had a policy or practice of failing to reimburse employees for costs incurred

24   to do their job; and whether Defendants have a policy or practice of failing to provide employees

25   with accurate wage statements and all wages upon separation.

26       Plaintiffs' claims are also typical of the claims of the class because the claims arise from

27   the same alleged course of conduct by Defendants and are based on the same legal theories.  *See*

28   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (concluding that typicality requires

United States District Court
Northern District of California

United States District Court
Northern District of California

only that the claims of the class representatives be "reasonably co-extensive with those of absent class members"). Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court has no reservations regarding the abilities of Class Counsel or their zeal in representing the class, and the record discloses no conflict of interest that would preclude Plaintiffs from acting as class representatives. Mara Appr. Decl. ¶¶ 3-6.

Second, with respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Here, all Class Members assert claims that arise out of a common course of conduct by Defendants, and this conduct is alleged to violate the California Labor Code. *See* Agreement §§ 42-43. These questions predominate. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019) ("[C]ommon course of conduct by the defendant[] can establish predominance in nationwide class actions."); *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *6 (N.D. Cal. Nov. 21, 2018) (finding common questions predominated because defendants actions "affected all Class Members in the same way through the same set of actions and decisions."). Moreover, given this commonality, and the number of potential class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements of Rule 23 are met and that certification of the class for settlement purposes is appropriate.

### B.    The Settlement is Fundamentally Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon,* 150 F.3d at 1026. In the Ninth Circuit, courts use a multi-factor balancing test to analyze whether a given settlement is fair, adequate, and reasonable. That test includes the following factors:

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026–27; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (discussing *Hanlon* factors).

Recent amendments to Rule 23 require the district court to consider a similar list of factors before approving a settlement, including whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In the Advisory Committee notes to the amendment, the Advisory Committee states that "[c]ourts have generated lists of factors to shed light" on whether a proposed class-action settlement is "fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2) ("2018 Advisory Notes"). The notes of the Advisory Committee explain that the enumerated, specific factors added to Rule 23(e)(2) are not intended to "displace" any factors currently used by the courts, but instead aim to focus the court and attorneys on "the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*; *cf. United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002) ("[T]he Advisory Committee Notes provide a reliable source of insight into the meaning of a rule . . . ."). Accordingly, the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's

2    precedent, bearing in mind the Advisory Committee's instruction not to let "[t]he sheer number of

3    factors" distract the Court and parties from the "central concerns" underlying Rule 23(e)(2).

4        Because this settlement occurs before formal class certification, the Court must also ensure

5    that the class settlement is not the "product of collusion among the negotiating parties."  *In re*

6    *Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 946–47 (9th Cir. 2011).

7                    **1.  Adequacy of Notice**

8        "Adequate notice is critical to court approval of a class settlement under Rule 23(e).

9    *Hanlon,* 150 F.3d at 1025.  For the Court to approve a settlement, "[t]he class must be notified of a

10    proposed settlement in a manner that does not systematically leave any group without notice."

11    *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d 615, 624

12    (9th Cir. 1982) (citation omitted).

13        The Court previously approved the parties' proposed notice procedures.  *See* Prelim. Order

14    ¶ 5.  In its motion for final approval, Plaintiffs state that Plaintiffs and RG/2 followed this

15    approved notice plan.  Appr. Mot. 4-5.  RG/2 sent mail notice to 5,164 Class Members.  Chiango

16    Decl. ¶¶ 9-10; Appr. Mot. 11.  Of those notices, 330 notices were returned as undeliverable, RG/2

17    re-mailed 268 notices, and 50 notices were found to be undeliverable with no forwarding address.

18    Mara Decl.  ¶¶ 10-13.  Class Counsel represented that this notice process resulted in

19    approximately 99.9% of class members receiving notice, and courts have found that such a rate

20    complies with Rule 23.  *See* Appr. Mot. 4; Mara Appr. Decl. ¶ 16.  *See Free Range Content, Inc.*

21    *v. Google, LLC,* No. 14-CV-02329-BLF, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019)

22    ("Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with

23    Rule 23." (brackets and internal quotation marks omitted)).

24        In light of these actions and the Court's prior order granting preliminary approval, the

25    Court finds that the parties have provided sufficient notice to the class members.  *See Lundell v.*

26    *Dell, Inc.*, Case No. 05-3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding

27    that notice via email and first class mail constituted the "best practicable notice" and satisfied due

28    process requirements).

### 2.  Rule 23(e)/*Hanlon* Factors

#### a.  *Adequate representation, arm's length negotiation, extent of completed discovery, and stage of proceedings*

Turning to the Rule 23(e) factors, the Court first considers whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(A)–(B).  These considerations overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings.  *See Hanlon,* 150 F.3d at 1026.

As discussed above when certifying the class, the Court finds that Plaintiffs and Class Counsel have adequately represented the class.  In its Preliminary Approval Order, the Court found no evidence of a conflict between class representatives or counsel and the rest of the class.  *See* Prelim. Order ¶ 2.  No evidence to the contrary has emerged.  Prior to settlement, Class Counsel had conducted a thorough investigation of the facts and retained an expert to conduct an analysis and extrapolation of the payroll data and time records to calculate Defendants' potential exposure to Plaintiffs' claims.  Appr. Mot. 11.  Class Counsel also drew on its experience in similar cases to assess the strengths and weakness of Plaintiffs' claims.  Appr. Mot. 11.  Lastly, the Court finds that Class Counsel has continued to represent the class diligently by complying with the notice plan and settlement procedures.

Plaintiffs likewise have actively participated in the prosecution of this case.  For example, Plaintiffs have regularly communicated with Class Counsel, reviewed documents, discussed documents and information with attorneys, and reviewed the settlement.  *See* Decl. of Richard B. Cortez ("Cortez Decl.") ¶¶ 4-5, ECF 53-3; Decl. of Ronald Cooksey ("Cooksey Decl.") ¶¶ 9-14, ECF 54.  The Court, therefore, finds the adequacy of representation weighs in favor of approval.

Additionally, the Court found that the parties participated in arms' length and informed negotiations between experienced counsel with the aid of a respected mediator.  Mara Appr. Decl. ¶ 16; Appr. Mot. 6-7; *see Free Range Content, Inc*., 2019 WL 1299504, at *6 ("[T]he Court notes that a presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." (brackets and internal quotation marks omitted)).

11

United States District Court
Northern District of California

1     Furthermore, because the settlement agreement was negotiated prior to formal class

2   certification, "there is an even greater potential for a breach of fiduciary duty owed the class

3   during settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

4   The Agreement, therefore, "must withstand an even higher level of scrutiny for evidence of

5   collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing

6   the court's approval as fair." *Id.* Signs of collusion may include: (1) "disproportionate

7   distribution of the settlement, or when the class receives no monetary distribution but class

8   counsel are amply rewarded," (2) the existence of a "clear sailing" provision so that attorneys' fees

9   are paid separate and apart from class funds, and (3) "when the parties arrange for fees not

10  awarded to revert to defendants rather than to be added to the class fund." *Id.* (internal quotation

11  marks omitted).

12      Here, there is no evidence of collusion. Class Counsel request fees that are proportionate

13  to the settlement fund and no funds revert to Defendants. *See* Mara Appr. Decl. ¶ 12; Agreement

14  §§ 24, 48. The Agreement does provide that Defendants will not object to attorneys fees up to

15  25% of the Gross Settlement Amount; however, the Agreement does not provide that attorneys'

16  fees are to be paid separate and apart from class funds and anything not awarded to Class Counsel

17  will become part of the Net Settlement Amount to be distributed to Participating Class Members.

18  *See* Agreement §§ 24, 48, 55. And, as discussed in greater detail below, the Court finds that the

19  requested fees are in fact reasonable. Thus, this factor weighs in favor of approval.

20          *b. Strength of Plaintiffs' case, and costs, risks, and delay of trial and appeal*

21      In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i),

22  courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense,

23  complexity, and likely duration of further litigation; [and] the risk of maintaining class action

24  status throughout the trial." *Hanlon*, 150 F.3d at 1026. "Approval of a class settlement is

25  appropriate when plaintiffs must overcome significant barriers to make their case." *Hendricks v.*

26  *Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *4 (N.D. Cal. Sept. 29, 2016).

27  "Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement,"

28  and "[g]enerally, unless the settlement is clearly inadequate, its acceptance and approval are

12

1    preferable to lengthy and expensive litigation with uncertain results." *Id.*

2         Here, Plaintiffs faced significant obstacles in this case.  Defendants have represented that

3    they intended to vigorously contest class certification and Plaintiffs' claims on the merits.  Appr.

4    Mot. 10-11; *see Hendricks*, 2016 WL 5462423, at *4-5 (finding factor weighs in favor of approval

5    where "[p]laintiff would be required to successfully move for class certification, survive summary

6    judgment, and receive a favorable verdict capable of withstanding a potential appeal.").  For

7    example, Defendants filed a motion to dismiss, and they contend that they complied with the

8    California Labor Code at all times, and even paid Plaintiffs' meal and rest period claims.  Appr.

9    Mot. 10.  Moreover, Defendants argue that drivers and certain non-exempt employees are exempt

10   from the overtime requirement, that Defendants are not required or expected to pay for employees'

11   use of their personal cellphones for work-related purposes, and that the wage statements included

12   a unique identification number.  Appr. Mot. 10-11.

13        Accordingly, the Court finds that this factor weighs in favor of approval.

14              *c.   Effectiveness of any proposed distribution method, terms of attorneys' fees,*
                       *and supplemental agreements*

15        Next, the Court must consider "the effectiveness of any proposed method of distributing

16   relief to the class," "the terms of any proposed award of attorney's fees," and "any agreement

17   required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  As discussed

18   in more detail below, the Court finds that the proposed award of attorneys' fees is reasonable, and

19   there are no supplemental agreements.

20        Here, the method of distributing relief to the class is effective because it is fair, adequate,

21   and reasonable.  The method of distributing relief to the class under the Agreement was proposed

22   by experienced counsel and has a reasonable and rational basis.  *See In re Aftermarket Auto.*

23   *Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624, at *4 (C.D.

24   Cal. Jan. 10, 2014) (stating that distribution method "need only have a reasonable, rational basis,

25   particularly if recommended by experienced and competent counsel"  (internal quotation marks

26   omitted)).   The method of distribution allocates relief to Participating Class Members based on

27   their pro rata share of workweeks during the period applicable to the relevant subclass.

28

United States District Court
Northern District of California

1   Agreement § 55.  The Agreement then allocates the Net Settlement Amount amongst the three

2   subclasses based on the estimated size of each subclass.  Agreement § 55.  "The Court finds that

3   'it is reasonable to allocate the settlement funds to class members based on the extent of their

4   injuries or the strength of their claims on the merits.'"  *In re Illumina, Inc. Sec. Litig.,* No. 3:16-

5   CV-3044-L-MSB, 2019 WL 6894075, at *8 (S.D. Cal. Dec. 18, 2019) (brackets omitted) (quoting

6   *In re Omnivision Techs., Inc*., 559 F.Supp.2d 1036, 1045 (N.D. Cal. 2008)).

7          This factor, therefore, weighs in favor of approval.

8                    *d.  Equitable treatment of class members relative to each other*

9          Rule 23 also requires consideration of whether "the proposal treats class members

10   equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Consistent with this instruction, the

11   Court considers whether the proposal "improperly grant[s] preferential treatment to class

12   representatives or segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

13   1079 (N.D. Cal. 2007) (citation omitted).

14          Under the Settlement Agreement, all Participating Class Members – *i.e.*, those Class

15   Members who do not submit valid opt-out statements – will receive an Individual Settlement

16   Payment from the Net Settlement Amount.  Agreement §§ 20, 30, 55.  The Court finds that the

17   method of distribution is equitable and class representatives do not receive preferential treatment.

18   Although the class representatives seek service awards, the service awards (as discussed below)

19   are reasonable and do not constitute inequitable treatment of class members.  *See Rodriguez v. W.*

20   *Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

21          This factor weighs in favor of approval.

22                    *e.  Settlement amount*

23          "The relief that the settlement is expected to provide to class members is a central

24   concern," though it is not enumerated among the factors of Rule 23(e).  2018 Advisory Notes.

25   Thus, the Court considers "the amount offered in the settlement."  *Hanlon,* 150 F.3d at 1026.

26   "Crucial to the determination of adequacy is the ratio of 'plaintiffs' expected recovery balanced

27   against the value of the settlement offer.'"  I*n re Extreme Networks, Inc. Sec. Litig*., No. 15-CV-

28   04883-BLF, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (quoting *In re Tableware,* 484 F.

United States District Court
Northern District of California

1    Supp. 2d at 1080).  However, "[i]t is well-settled law that a cash settlement amounting to only a

2    fraction of the potential recovery does not per se render the settlement inadequate or unfair."

3    *Officers for Justice*, 688 F.2d at 628.

4         The Net Settlement Amount of $2,112,918.81 represents a substantial recovery for the

5    class.  *See* Mara Appr. Decl. ¶ 13.  The estimated average settlement payment to each Class

6    Member in the Non-Exempt Subclass is $423.21 and the highest estimated payment is $1,338.56,

7    the estimated average settlement payment to each Class Member in the Driver Subclass is $562.75

8    and the highest estimated payment is $1,036.92, and the estimated average settlement payment to

9    each Class Member in the Exempt Subclass is $84.58 and the highest estimated settlement

10   payment is $104.99.  Chiango Appr. Decl. ¶ 16; *see Linney v. Cellular Alaska P'ship*, 151 F.3d

11   1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of

12   the potential recovery does not, in and of itself, mean that the proposed settlement is grossly

13   inadequate and should be disapproved.").  This represents a substantial recovery for individuals

14   who may not possess the means to individually pursue his or her own claims.

15        Accordingly, this factor weights in favor of approval.

16        *f.   Counsel's experience*

17        The Court also considers "the experience and views of counsel."  *Hanlon,* 150 F. 3d at

18   1026.  Class Counsel has extensive experience representing plaintiffs and classes in complex

19   litigation and consumer class actions and support settlement here.  Appr. Mot. 11.  That Class

20   Counsel advocate in favor of settlement weighs in favor of approval.  *See Free Range Content,*

21   *Inc.*, 2019 WL 1299504, at *7 ("Class counsel's views that the settlement is a good one is entitled

22   to significant weight.").

23        *g.   Objections*

24        "[T]he absence of a large number of objections to a proposed class action settlement raises

25   a strong presumption that the terms of a proposed class settlement action are favorable to the class

26   members."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation

27   omitted).  Here, Class Counsel and the Court received zero objections.  Chiang Appr. Decl. ¶ 15.

28   Likewise, out of the 5,164 Class Members, there were only 5 requests to opt out.  Chiang Appr.

Decl. ¶ 13.  This positive response from the class confirms that the settlement is fair and reasonable.

\* \* \*

Balancing the relevant factors, the Court finds the settlement fair and reasonable under Rule 23(e) and *Hanlon*.

## C.    CONCLUSION

For the foregoing reasons, and after considering the record as a whole, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the settlement is fair, adequate, and reasonable.

Plaintiffs' Motion for Final Approval of the Settlement is GRANTED.

## III.   MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Plaintiffs seek an award of attorneys' fees in the amount of $750,000, which is 25% of the Gross Settlement Amount, reimbursement of litigation expenses in the amount of $17,081.19, and a service award of $5,000 for each class representative.  The Court also considers the reasonableness of the Settlement Administrator's requested costs.

### A.    Attorneys' Fees

#### 1.    Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941 (internal citations omitted).  "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees.  *Id.* at 942.

Under the percentage-of-recovery method, attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class.  *Id.*  Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure," *id.*

United States District Court
Northern District of California

16

(internal quotation marks omitted), and "20-30% [i]s the usual range," *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011).  "To determine the reasonableness of the percentage requested in any given case, the court generally must consider: '(1) the result achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases" with the overall result and benefit to the class as the most critical factor.'"  *Wert v. U.S. Bancorp*, No. 13-CV-3130-BAS-AGS, 2017 WL 5167397, at *6 (S.D. Cal. Nov. 7, 2017) (quoting *In re Omnivision Technologies, Inc*., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)); *see In re Capacitors Antitrust Litig*., No. 3:14-CV-03264-JD, 2018 WL 4790575, at *3 (N.D. Cal. Sept. 21, 2018) (listing same factors and citing *Vizcaino*, 290 F.3d at 1048-50).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941.  This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award.  *Vizcaino*, 290 F.3d at 1050.  Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable."  *Id.*  "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."  *Id.*  Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award."  *Id.*  "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting,"

17

and courts "may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

### 2. Discussion

The Court is satisfied that the request for attorneys' fees is reasonable. Using the percentage-of-recovery method, the Court starts at the 25% benchmark, which is the percentage requested by Plaintiffs. *See In re Bluetooth*, 654 F.3d at 942. The Court considers the *Vizcaino* factors to determine whether the 25% benchmark is reasonable in this case. The Court addresses each factor in turn.

#### a. Results achieved for the class

The most critical factor is the results achieved for the class. *See In re Omnivision Techs*, 559 F. Supp. 2d at 1046. As previously discussed, the settlement represents a substantial benefit to the class: the Net Settlement Amount of $2,112,918.81 will be allocated amongst each of the subclasses – based on the size of the subclass – and each Participating Class Member will receive a pro rata share based on their workweeks during the period applicable to the relevant subclass. *See* Agreement § 55; Mara Appr. Decl. ¶ 13. Moreover, the Settlement allows all Participating Class Members to receive a monetary benefit. The estimated average settlement payment to each Class Member in the Non-Exempt Subclass is $423.21, the estimated average settlement payment to each Class Member in the Driver Subclass is $562.75, and the estimated average settlement payment to each Class Member in the Exempt Subclass is $84.58. Chiango Appr. Decl. ¶ 16. The recovery achieved here, therefore, weighs in favor of Plaintiffs' receiving a 25% benchmark. *See Wert*, 2017 WL 5167397, at *6 (finding result was "excellent one for the class" where average payout ranged from $19.95 to $384.52).

#### b. Risk of litigation

Second, the Court considers the risk that Class Counsel faced in continuing with litigation. "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046-47; *see Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant

18

circumstance."). As discussed above, Plaintiffs faced many obstacles if they continued to trial. Defendants have represented that they intended to vigorously contest class certification and Plaintiffs' claims on the merits. Appr. Mot. 10-11. For example, Defendants contend that they complied with the California Labor Code at all times, drivers and certain non-exempt employees are exempt from the overtime requirement, Defendants are not required or expected to pay for employees' use of their personal cellphones for work-related purposes, and the wage statements included a unique identification number. Appr. Mot. 10-11. Thus, the risk that Plaintiffs would have recovered less, if anything, also supports Plaintiffs' benchmark recovery.

### c. Skill, experience, and performance of counsel

Third, the Court considers the skill, experience, and performance of counsel. Class Counsel are experienced in the prosecution of wage and hour class actions and cases alleging violations of PAGA. *See* Decl. of David Mara ("Mara Fees Decl.") ¶ 3, ECF 66-1; Decl. of Robin G. Workman ("Workman Fees Decl.") ¶ 11, ECF 66-6. The quality of their work is reflected in the results achieved for the class. Moreover, defense counsel is also experienced counsel who vigorously opposed Plaintiffs' claims. *See Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) ("Given the contentious nature of the action, the Court finds that the result achieved in this matter would have been unlikely if entrusted to counsel of lesser experience or capability."). This factor, therefore, favors the award of the requested percentage of recovery.

### d. Contingent nature of the fee

Fourth, Class Counsel represented Plaintiffs on a contingency basis, Fees Mot. 5; thus, Class Counsel "bore the financial burden of pursuing the litigation for an extended period of time." *Zepeda*, 2017 WL 1113293, at *21. This suit began nearly two years ago, and Class Counsel spent over 1,411 hours litigating the case, without receiving compensation. Fees Mot. 11. Class Counsel also advanced $17,081.19 in expenses related to prosecuting this action. Fees Mot. 15; *see* Mara Fees Decl. ¶ 23; Workman Fees Decl. ¶ 31. "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.

19

### e.  Fees awarded in comparable cases

Fifth, the Court compares the fees awarded in comparable cases.  Plaintiffs' request for a 25% fee falls within the usual range of common fund cases, *see, e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% . . . ."), and wage and hour class action cases, *see, e.g.*, *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) ("[T]he request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases . . . ."); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (approving award of 30%); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing to five recent wage and hour cases where courts approved awards between 30% and 33.3%).  The awards in other cases, therefore, support an award of 25% of the settlement fund.

### f.  Reaction of the class

"The reaction of the class may also be a determining factor in the determining the fee award."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.  Here, there were only five opt-opts and no objections.  *See* Chiango Appr. Dec. ¶¶ 13, 15.  The fact that no objections have been received supports an award of the requested fees.  *See Jarrell v. Amerigas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *3 (N.D. Cal. Apr. 5, 2018) ("[T]he Court now concludes that a slight upward adjustment – to 30% of the common fund – is warranted based on several factors, including the results achieved, the risk of non-recovery, and the fact that no class member has objected to the proposed award.").

### g.  Lodestar cross-check

As a final check on the reasonableness of requested attorneys' fees, courts often compare the amount counsel would receive under the percentage-of-recovery method with the amount counsel would have received under the lodestar method.  *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.  Here, Class Counsel spent a total of 1,411 hours on this case.  Fees Mot. 11; Mara Fees Decl. ¶ 22; Workman Fees Decl. ¶¶ 17-20; *see* Mara Fees Decl., Ex. 1 ("Summ. of

Time and Costs"), ECF 66-2.  Based on the current usual and customary hourly billing rates of each firm, Class Counsel would have received $731,354.50 under the lodestar method.  Fees Mot. 11; Mara Fees Decl. ¶ 22; Workman Fees Decl. ¶¶ 17-20.  This represents a multiplier of 1.03, and "courts have approved multipliers ranging between 1 and 4."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047; *see Sheikh v. Tesla, Inc.*, No. 17-CV-02193-BLF, 2018 WL 5794532, at *8 (N.D. Cal. Nov. 2, 2018) ("Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases.").  Comparison with the lodestar method therefore demonstrates that the requested 25% fee award is reasonable.

* * *

Accordingly, the Court approves an award of attorneys' fees in the amount of 25% of the Gross Settlement Amount, or $750,000.

**B.    Litigation Expenses**

Plaintiffs seek up to $30,000 in litigation expenses.  The Court is likewise satisfied with Plaintiffs' request for litigation expenses.  An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).  Here, Class Counsel have stated that their final total for litigation expenses is $17,081.19, *see* Fees Mot. 15, and Class Counsel have submitted an itemized list of expenses by category of expense incurred, *see* Mara Fees Decl., Ex. 4, Costs Summ., ECF 66-5; Workman Fees Decl. ¶ 31.  The Court has reviewed the list and finds the expenses to be reasonable. Accordingly, the Court approves an award in the requested amount of $17,081.19.

**C.    Service Award**

Plaintiffs request a service award in the amount of $5,000 for each class representative. Service or incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958-59 (internal citation omitted).  "Incentive awards typically range from $2,000 to $10,000."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245,

1    267 (N.D. Cal. 2015).  Service awards as high as $5,000 are presumptively reasonable in this

2    district.  *See, e.g.*, *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC2015 WL

3    7995534, at *3 (N.D. Cal. Dec. 7, 2015).

4         Here, each class representative expended considerable effort on behalf of the class.  For

5    example, Plaintiffs have regularly communicated with Class Counsel, reviewed documents,

6    discussed documents and information with attorneys, and reviewed the settlement.  *See* Cortez

7    Decl. ¶¶ 4-5; Cooksey Decl. ¶¶ 9-14; Fees Mot. 15-18.  Moreover, each class representative put

8    their names on the complaint and put their future employment prospects at risk.  Fees Mot. 16.

9    Given the time and assistance the class representatives put into the case and the success of the

10   recovery, a service award in the amount of $5,000 is reasonable.  *See Hayes v. MagnaChip*

11   *Semiconductor Corp.*, No.14-cv-01160-JST, 2016 WL 6902856 at *10 (N.D. Cal. Nov. 21, 2016)

12   (noting $5,000 service awards are presumptively reasonable in the Ninth Circuit); *In re Am.*

13   *Apparel S'holder Litig.*, No. CV 10-06352 MMM, 2014 WL 10212865, at *34 (C.D. Cal. July 28,

14   2014) (awarding service award of $6,600 in securities class action).

15        The Court concludes that the requested $5,000 award for each class representatives is

16   appropriate in this case.

17        **D.    Settlement Administrator Costs**

18        The Court also holds that it is appropriate to award RG/2 its costs.  The Agreement

19   contemplates that "[t]he Settlement Administration Costs shall be paid from the Gross Settlement

20   Amount for the reasonable costs of administration of the Settlement."  Agreement § 52.  The

21   parties estimated that this amount will not exceed $35,000.  Agreement § 52; Appr. Mot. 13.

22        Given the somewhat complex nature of the allocation plan, the Court approves the

23   awarding of costs to RG/2 in an amount not to exceed $35,000, subject to Plaintiffs submitting an

24   accounting of such costs with a request that the Court approve the final amount.  Plaintiffs shall

25   submit such a request by administrative motion **within 14 days of RG/2's final accounting**.  If

26   RG/2 does not reach this cap, the excess funds shall be distributed to the class claimants according

27   to the provisions of the Agreement if practicable or distributed through *cy pres*.

28

United States District Court
Northern District of California

**IV.     ORDER**

For the reasons discussed above,

(1)     Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED; and

(2)     Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments is GRANTED.  Plaintiffs are awarded attorneys' fees in the amount of $750,000, costs and expenses in the amount of $17,081.19, and service awards for each of the two class representatives in the amount of $5,000.

(3)     The Settlement Administrator costs are APPROVED in an amount not to exceed $35,000.

Without affecting the finality of this Order and accompanying Judgment in any way, the Court retains jurisdiction over (1) implementation and enforcement of the Agreement until each and every act agreed to be performed by the parties pursuant to the Agreement has been performed; (2) any other actions necessary to conclude the Settlement and to administer, effectuate, interpret, and monitor compliance with the provisions of the Agreement; and (3) all parties to this action and Settlement Class members for the purpose of implementing and enforcing the Agreement.

Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, the parties shall file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements.  The parties must seek approval from the Court for any *cy pres* distributions.


**IT IS SO ORDERED.**


Dated: February 6, 2020

_____
BETH LABSON FREEMAN
United States District Judge